Diane Gail WATTS, et vir, Jesse W. Watts, Plaintiffs/Appellants,

v.

ROBERTSON COUNTY, Tennessee, Robertson County Highway Department, and Bob G. Keck, Supervisor of Highway Department, Defendants/Appellees.

Court of Appeals of Tennessee, Middle Section, at Nashville.

Nov. 6, 1992.

Permission to Appeal Denied by Supreme Court March 1, 1993.

---

F. Dulin Kelly, Kelly & Jones, Hendersonville, for plaintiffs/appellants.

Clyde W. Richert, III, Springfield, for defendants/appellees.

**OPINION**

CANTRELL, Judge.

The sole question in this appeal is whether Tenn.Code Ann. § 29–20–205(1) of the Tennessee Governmental Tort Liability Act[1] gives the appellees immunity from liability for failure to install guard rails on a Robertson County bridge. The trial judge held that the failure to install guard rails was a discretionary decision rather than an operational one and granted summary judgment to the appellees. We reverse for the reasons stated below.

**I.**

The appellants were involved in a car accident at the Peyton Creek bridge in Robertson County on December 25, 1989. At the time of the accident, the couple had been driving between relatives' homes in the midst of a severe winter storm. While trying to negotiate the bridge, the car went off the road, flipped over, and ended up in the creek. Mrs. Watts was seriously injured. It is the contention of the appellants that the accident was caused by the absence of guard rails on the bridge.

In 1947, by private act, the legislature provided regulations for the construction and maintenance of public roads and bridges in Tennessee. Priv.L., ch. 380 (1947). According to Mr. Keck, the Robertson County Road Supervisor, the act was adopted by Robertson County. Section 17(2) and (3) of the act provide that the county road supervisor shall:

(2) Make inspections of all roads, highways and bridges of any such County to see that the same are in good repair and at all times safe for travel, and to that end to establish an inspection system.
(3) Keep all such roads, highways and bridges in good repair and safe for travel.

Instead of making their own inspections, Robertson County delegated this responsibility to the state. Since 1980, the Peyton Creek bridge has been inspected by the

---

1. Although the appellants presented issues under Tenn.Code Ann. § 29–20–203 and –204 in their pleadings, these were not addressed at the motion for summary judgment or in their brief on appeal.

state on four occasions. Each time the state advised the county through its inspection report that approach guard rails should be installed. However, Mr. Keck never read the reports, nor did he have guard rails installed.

In granting summary judgment to the appellees, the lower court determined that:

Whether to install approach guardrails requires an evaluation of the road and bridge by the proper County official. It is a judgment call. This is a discretionary function and the County is immune from suit under the provisions of T.C.A. § 29–20–205.

## II.

■ Summary judgment may be granted where the only issues involved in the case are purely legal. Summary judgment may not be used to resolve factual disputes. *Jones v. Home Indem. Ins. Co.*, 651 S.W.2d 213, 214 (Tenn.1983); however, Rule 56.03, Tenn.R.Civ.Proc., says that the judgment sought should be issued "forthwith" if the record before the court shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Since we find that the failure to install guard rails on the Peyton Creek bridge was an operational decision rather than a discretionary decision, we hold that Tenn.Code Ann. § 29–20–205(1) does not exempt Robertson County from the general removal of immunity.

## III.

■ In order to determine whether a decision falls within the discretionary function exception set forth in Tenn.Code Ann. § 29–20–205, we must apply the "planning-operational" test as stated in *Bowers by Bowers v. City of Chattanooga*, 826 S.W.2d 427 (Tenn.1992).[2] After finding that the imprecise classifications under the law were leading to inconsistent results, the Supreme Court adopted the "planning-operational" test under which:

[D]ecisions that rise to the level of planning or policy-making are considered discretionary acts which do not give rise to

tort liability, while decisions that are merely operational are not considered discretionary acts and, therefore, do not give rise to immunity. *See Carlson v. State*, 598 P.2d 969, 972 (Alaska 1979). *Id.* at 430.

The Court went on to state that "[u]nder the planning-operational test, discretion function immunity does not automatically attach to all acts involving choice or judgment. Such an analysis recognizes that, to some extent, every act involves discretion." *Id.* at 431. Instead, "the underlying policy of governmental immunity is better served by examining (1) the decision-making process and (2) the propriety of judicial review of the resulting decision." *Id.*

In applying the above test, the court held that a school bus driver's decision on where to stop at a particular intersection was an operational act not within the discretionary function exception, due to the existence of a clear plan and policy of the state of Tennessee and the city of Chattanooga to provide safe passage across an immediate street toward a child's destination. *Id.* at 432. "[T]he discretionary function exception will not apply to a claim that government employees failed to comply with regulations or policies designed to guide their actions in a particular situation." *Id.* at 431.

■ The key to deciding the present case is the Court's finding that "a decision resulting from a determination based on preexisting laws, regulations, policies, or standards, usually indicates that its maker is performing an operational act." *Id.* Here, the appellees, by private act, set up a policy requiring the county road supervisor to inspect the roads and to insure that those roads were safe. The county had the state inspect the roads as required by law; however, the county failed to utilize the findings of those inspections. More importantly, the county failed to install the guard rails recommended by the reports, hence, making the bridge unsafe in violation of the county's own regulations.

An earlier unpublished opinion of this court, *Rucker v. Metropolitan Government of Nashville and Davidson County*,

---

**2.** *Bowers* was decided shortly after this case was    appealed.

No. 89–165–II, 1990 WL 182275 (Tenn.App. filed Nov. 28, 1990), points to the same conclusion. In *Rucker* a woman drowned in a flooded street where the drainage system was inadequate. This court held that:

Metro chose to install a drainage system. Metro set standards for that drainage system. By Metro's own admission, the drainage system at this location did not meet those standards and, furthermore, had not met Metro's standards for at least twenty five years. Metro cannot now argue that, as a matter of policy, Metro chose to leave in place a storm drainage system which by Metro's own standards was grossly inadequate. A government cannot make it a policy to ignore its own policy.

*Id.*, slip op. at 16, 1990 WL 182275, at *8.

Applying these rules to the present case, we reverse the holding of the lower court. Here, a law was enacted by the legislature and approved by the county requiring that all public roads and bridges be maintained in a safe condition. That decision was within the county's discretion. The county also chose to set up a policy for maintaining its bridges and to delegate the responsibility of inspection to the state. Once the bridge was inspected and determined to be in need of guard rails, by its own private act, the county was required to install them.

Finding that the failure to install guard rails on the Peyton Creek bridge was operational rather than discretionary, we hold that the lower court erred by granting summary judgment to the appellees. The case is remanded to the lower court for further proceedings. Tax the costs of this appeal to the appellees.

FRANKS, P.J., concurs.

TODD, P.J., dissents.

TODD, Presiding Judge, dissenting.

This suit arises from the failure of a county to install guard rails beside the approaches to a bridge which was erected long ago. So far as this record shows, guard rails have never been at this location.

It must be presumed that the designer of the bridge and/or the approaches thereto did not see fit to include guard rails in the design and specifications of the highway approaching the bridge, and that the appropriate county authority approved the design and specifications. This constituted a clearly discretionary decision for which the county would not be liable under T.C.A. § 29–20–205(1).

The absence of a guard rail where there has never been a guard rail is not an "unsafe condition of a ... highway," because it is not due to failure to properly maintain that which has been constructed, but failure to include rails in original design. *See Butler v. City of Dyersburg*, Tenn.App. 1990, 798 S.W.2d 776.

The delegation of inspection duties of the County Commissioner to the State Department of Transportation was simply a substitution of the State for the Commissioner, so that the report of the State must be considered the report of the Commissioner.

In substance, the report states:

The approaches to this bridge are of faulty design by the omission of guard rails which are needed for the safety of the travelling public.

Granting the correctness of this report, it does not describe an unsafe condition of the bridge or its approaches, such as defective pavement. The report is of a needed revision of design by addition of rails.

The result of the decision of the majority is to impose liability upon the counties for any injury resulting from failure to finance and construct all safety devices recommended by the County Highway Commissioner.

I regret that I cannot concur in the decision.