Ronald Allen KIRBY, and wife Sharon
Kirby, Plaintiffs–Appellees,

v.

MACON COUNTY, Tennessee, Macon
County Highway Department, and Bern-
ice Jones, Highway Superintendent, De-
fendants–Appellants.

Supreme Court of Tennessee,
at Nashville.

Oct. 17, 1994.

Rehearing Denied Nov. 21, 1994.

Michael E. Evans, Nashville, for appellants.

F. Dulin Kelly, Nashville, for appellees.

## OPINION

BIRCH, Justice.

In this action brought under the provisions of the Governmental Tort Liability Act,[1] the plaintiff, Ronald Kirby, sought damages for injuries received when his truck slid off a one-lane bridge in rural Macon County. Kirby asserted that Macon County was negligent in failing to install standard metal guardrails on the bridge, or, alternatively, in failing to adequately maintain the wooden wheel guards already installed. The trial court, sitting without a jury, found that the general immunity provisions of the Act applied, found that the county did not have actual or constructive notice of the missing wheel guards, and held that all defendants were immune from liability. On appeal, the Court of Appeals held that even though the county did not have actual or constructive notice of the missing wheel guards, the bridge was defective as built; therefore, the county was charged with notice of the defect and thereby lost its immunity. We find that the Court of Appeals erred in dispensing with the requirement of actual or constructive notice; we conclude that the defendants are immune from suit. Accordingly, we reverse the judgment of the Court of Appeals and reinstate the judgment of the trial court.

1. Tenn.Code Ann. § 29–20–101 et seq.

## I

The plaintiffs, Ronald and Sharon Kirby, are residents of Westmoreland, Tennessee, located in Sumner County near the Macon County line. In the days preceding the accident, a winter storm had covered the roads and bridges in the area with ice. On the morning of the accident, December 24, 1989, Ronald Kirby and his family awoke to find their water pipes frozen, so he set out in search of a fresh-water spring. During his excursion, he came to a one-lane bridge over Big Trammel Creek in Macon County. According to his testimony, the road leading to the bridge was patchy with ice, and the bridge itself was frozen solid over its entire surface. Kirby successfully negotiated the bridge by slowing his truck to approximately ten miles per hour. After crossing the bridge, he located a spring, filled his containers with water, and began the return trip home.

From the direction in which Kirby was traveling, the road leading to the bridge curves to the left immediately before reaching the bridge, so that one's approach requires a slight left turn to drive onto the bridge. When Kirby reached the bridge on his return trip, he stopped his truck on a dry patch of road approximately twenty to thirty feet from the edge of the bridge. He then let his foot off the brake and idled the truck onto the bridge at one to two miles per hour. When his back tires reached the bridge, the truck began to slide to the right; because of the ice, Kirby could not stop. As he slid towards the edge of the bridge, he noticed for the first time that there were no wheel guards in place on that section of the bridge. The truck slid off the side of the bridge and landed on its top in the frozen creek. Kirby suffered numerous serious injuries, including a broken sternum, a broken arm, a partially severed ear, shoulder injury, and crushed vertebrae.

At trial, the bridge over Big Trammel Creek was described as a wooden bridge approximately twelve feet wide and forty-seven feet long. There are no metal guardrails along the sides of the bridge. There are, however, wheel guards constructed of

pieces of lumber nailed together along the edges of the bridge. The wheel guards are approximately twelve inches high. A number of people who regularly used this bridge testified that it is common for parts of the wheel guards to be missing. The plaintiffs introduced into evidence a number of bridge inspection reports prepared by the Tennessee Department of Transportation covering their inspections of this bridge in 1981, 1984, 1986, and 1988.[2] Each of the reports cited the absence of guardrails along the bridge as a "poor" or "critical" condition and recommended the installation of approved guardrails. The 1986 and 1988 reports also noted the condition of the wheel guards. In 1986, the wheel guards were found "loose in several areas;" the 1988 report stated that "[t]he timber curb boards are in poor condition. There is a 50% loss of boards, and the remainder have areas of heavy decay."

The defendants introduced into evidence the affidavits of two employees of the Tennessee Department of Transportation, both of whom had some responsibility for aspects of the state's bridge construction and inspection programs. Each acknowledged an awareness of the state's recommendation for the installation of guardrails on this particular bridge. However, each stated, essentially, that "[o]nce the state makes recommendations to the county concerning an area such as guardrails, it is up to the county and its officials to decide whether to erect such guardrails. If the county officials in considering the maintenance recommendations chooses [sic] not to erect guardrails, that is within their discretion."

Defendant Bernice Jones, the highway superintendent of Macon County, related two reasons the county had disregarded the state's recommendations concerning the installation of guardrails. First, this particular bridge was located in a very remote, rural area and large farm machinery regularly crossed this bridge. If guardrails had been installed, farmers would not have been able to cross this bridge with their farm machinery.[3] Second, the county simply could not afford to install guardrails on every bridge.

Jones acknowledged continuing difficulty maintaining the wooden wheel guards the county had chosen to install. He testified that when the wide farm equipment crossed the bridge, the wheel guards were damaged or displaced. Although no formal schedule existed for checking the more than one hundred bridges in the county, officials regularly checked them for needed maintenance and repairs. Jones testified that approximately three weeks prior to Kirby's accident, he discovered that a twelve-foot section of the wheel guard on the bridge in question was missing; his work crew immediately replaced the missing section. He testified further that between the time of its replacement and Kirby's accident, no one had contacted his office to notify him that any portion of the wheel guards was missing from the bridge. Several of the plaintiffs' witnesses testified about the frequency with which the wheel guards were displaced; not one of them, however, notified county officials when they were missing.

When the trial was concluded, the trial court held that the proximate cause of the accident was the section of wheel guard missing from the bridge. However, because the plaintiffs had failed to prove either actual or constructive notice to the county of the defective, unsafe or dangerous condition, i.e., the missing wheel guards, the trial court dismissed the case. *See* Tenn.Code Ann. § 29–20–203(b).

On appeal, the Court of Appeals reversed the judgment of the trial court. Although it agreed with the trial court's conclusion that the plaintiffs had failed to prove actual or

---

**2.** Also contained in the record, and discussed along with the other reports by the Court of Appeals, is a report from a state inspection in 1990, which was *after* Kirby's accident. Although this report is arguably not relevant due to the fact that the accident had already occurred by the time of the 1990 inspection, this report is similar to the other earlier reports. Moreover, there is nothing in the record to show that the

defendants objected to the admission of the 1990 report into evidence.

**3.** In fact, Jones testified that the yellow- and black-striped paddle boards, placed at the ends of this bridge some time after the accident, have been pulled out of the ground by farmers because the boards block certain farm equipment from using the bridge.

constructive notice, the intermediate court found that under the rationale of *Glover v. Hardeman County,* 713 S.W.2d 73 (Tenn.Ct. App.1985), the bridge was defective as originally constructed, actual or constructive notice was not required, and the county was liable. The court opined that the original defect was the absence of guardrails, and that the installation of wheel guards was inadequate to cure the defect. Therefore notice to the county was presumed, and the county was not immune from suit under Tenn.Code Ann. § 29–20–203. We find that .the decision to install wheel guards instead of the standard guardrails falls within the discretionary function exception of Tenn.Code Ann. § 29–20–205(1). Hence, the bridge was not defective as originally constructed. Furthermore, we find that the defendants did not have actual or constructive notice and are thus immune from this suit.

## II

■ Prior to the implementation of the Governmental Tort Liability Act, Tennessee courts adhered to the common law doctrine of sovereign immunity, under which the State and certain of its governmental subdivisions were protected from liability for damages caused by their tortious act. The Tennessee Constitution provides that "[s]uits may be brought against the State in such manner and in such courts as the Legislature may by law direct." Tenn. Const. art I, § 17. The passage of the Tennessee Governmental Tort Liability Act in January 1974 was therefore an act of grace through which the legislature provided general immunity from tort liability to all governmental entities, removing it, however, in limited and specified instances.

The Act provides, in pertinent part, as follows:

> Except as may be otherwise provided in this chapter, all governmental entities shall be immune from suit for any injury which may·result from the activities of such governmental entities wherein such governmental entities are engaged in the exercise and discharge of any of their functions, governmental or proprietary.

Tenn.Code Ann. § 29–20–201(a) (Supp.1993). The Act then removes immunity "for injuries resulting from the negligent operation by any employee of a motor vehicle or other equipment," (Tenn.Code Ann. § 29–20–202(a)), "for any injury caused by a defective, unsafe, or dangerous condition of any street, alley sidewalk or highway," (Tenn.Code Ann. § 29–20–203(a)), "for any injury caused by the dangerous or defective condition of any public building, structure, dam, reservoir or other public improvement," (Tenn.Code Ann. § 29–20–204(a)), and "for injury proximately caused by a negligent act or omission of any employee" with numerous exceptions. (Tenn.Code Ann. § 29–20–205).

This action under submission was brought under Tenn.Code Ann. §§ 29–20–203 and 29–20–205. Section 29–20–203 provides:

> (a) Immunity from suit of a governmental entity is removed for any injury caused by a defective, unsafe, or dangerous condition of any street, alley, sidewalk or highway, owned and controlled by such governmental entity. "Street" or "highway" includes traffic control devices thereon.
>
> (b) This section shall not apply unless constructive and/or actual notice to the governmental entity of such condition be alleged and proved....

Section 29–20–205 provides:

> .Immunity from suit of all governmental entities is removed for injury proximately caused by a negligent act or omission of any employee within the scope of his employment except if the injury:
>
> (1) Arises out of the exercise or performance or the failure to exercise or perform a discretionary function, whether or not the discretion is abused.

■ We point out here that the application of one of these immunity exceptions does not necessarily preclude the application of another. In other words, it is conceivable that either provision might apply to remove governmental immunity. Likewise, it is possible that no exception will apply, thereby preserving governmental immunity. For a general discussion of these sections see *Fretwell v. Chaffin,* 652 S.W.2d 755 (Tenn.1983); *Harris v. Williamson County,* 835 S.W.2d 588 (Tenn.Ct.App.1992); *Butler v. City of Dyersburg,* 798 S.W.2d 776 (Tenn.Ct.App.1990);

*O'Guin v. Corbin,* 777 S.W.2d 697 (Tenn.Ct. App.1980); *Swafford v. City of Chattanooga,* 743 S.W.2d 174 (Tenn.Ct.App.1987); *Davis v. City of Cleveland,* 709 S.W.2d 613 (Tenn.Ct. App.1986); *Baker v. Seal,* 694 S.W.2d 948 (Tenn.Ct.App.1984); *Mowdy v. Kelly,* 667 S.W.2d 489 (Tenn.Ct.App.1983).

## III

The plaintiffs first alleged that the failure to install guardrails was a negligent omission by Macon County officials. Such an omission could result in the removal of governmental immunity under Tenn.Code Ann. § 29–20–205. The pivotal question is whether this decision was a discretionary function. If it was, then governmental immunity is preserved under § 29–20–205(1).

To aid in determining what functions are discretionary, this Court adopted the "planning-operational test." *See Bowers v. City of Chattanooga,* 826 S.W.2d 427 (Tenn.1992). The Court explained this standard as follows:

> Today we approve of the analysis that determines which acts are entitled to immunity by distinguishing those performed at the "planning" level from those performed at the "operational" level. As Chief Justice Shepard of Indiana said in *Peavler v. Board of Commissioners,* 528 N.E.2d 40, 45 (Ind.1988):
>
> The distinction between planning and operational functions is a standard, rather than a precise rule. The focus must remain on the policy underlying governmental immunity. If the act is one committed to coordinate branches of the government involving policy decisions not reviewable under traditional tort standards of reasonableness, the government is immune from liability even if the act was performed negligently.
>
> ... Under the planning-operational test, decisions that rise to the level of planning or policy-making are considered discretionary acts which do not give rise to tort liability, while decisions that are merely operational are not considered discretionary acts and, therefore, do not give rise to immunity. *See Carlson v. State,* 598 P.2d 969, 972 (Alaska 1979)....

> Under the planning-operational test, discretionary function immunity does not automatically attach to all acts involving choice or judgment. Such an analysis recognizes that, to some extent, every act involves discretion. Rather, the underlying policy of governmental immunity is better served by examining (1) the decision-making process and (2) the propriety of judicial review of the resulting decision....

> A consideration of the decision-making process, as well as the factors influencing a particular decision, will often reveal whether that decision is to be viewed as planning or operational. If a particular course of conduct is determined after consideration or debate by an individual or group charged with the formulation of plans or policies, it strongly suggests the result is a planning decision. These decisions often result from assessing priorities; allocating resources; developing policies; or establishing plans, specifications, or schedules....

> On the other hand, a decision resulting from a determination based on preexisting laws, regulations, policies, or standards, usually indicates that its maker is performing an operational act. Similarly operational are those ad hoc decisions made by an individual or group not charged with the development of plans or policies. These operational acts, which often implement prior planning decisions, are not "discretionary functions" within the meaning of the Tennessee Governmental Tort Liability Act....

> Another factor bearing on whether an act should be considered planning or operational is whether the decision is the type properly reviewable by the courts. The discretionary function exception "recognizes that courts are ill-equipped to investigate and balance the numerous factors that go into an executive or legislative decision" and therefore allows the government to operate without undue interference by the courts. *See Wainscott v. State,* 642 P.2d 1355, 1356 (Alaska 1982). Put succinctly:

[T]he judiciary confines itself ... to adjudication of facts based on discernible objective standards of law. In the context of tort actions ... these objective standards are notably lacking when the question is not negligence but social wisdom, not due care but political practicability, not [reasonableness] but economic expediency. Tort law simply furnishes an inadequate crucible for testing the merits of social, political, or economic decisions.

*Peavler,* 528 N.E.2d at 44–45 (quoting *Blessing v. United States,* 447 F.Supp. 1160, 1170 (E.D.Penn.1978).

*Bowers,* 826 S.W.2d at 430–431.

The *Bowers* "planning-operational test" was applied in *Harris v. Williamson County,* 835 S.W.2d 588 (Tenn.Ct.App.1992). The victim in *Harris* was struck by an automobile while crossing Highway 31A in a school zone. While there were signs that designated this particular strip of road a "school zone" and directed traffic to reduce the speed to fifteen miles per hour when children were present, the county had never considered erecting a flashing school zone light. The court held that the initial decision whether to erect such a flashing light was a discretionary function and preserved the county's immunity. *Id.* at 592.

The *Bowers* rationale helps to explain decisions prior to 1992. For example in *Swafford v. City of Chattanooga,* 743 S.W.2d 174 (Tenn.Ct.App.1987), the plaintiff sued the city of Chattanooga after being struck by another vehicle while driving on a road in which the lanes had not been properly delineated. The court held that the marking of traffic control lanes on a city thoroughfare that served over eleven thousand five hundred cars per day, was not a "discretionary function." We believe the result would have been the same had the "planning-operational test" been applied. In *Swafford,* the city had

already decided to paint the lines marking the lanes on the roadway. The persons responsible for implementing this decision simply had not done it. Additionally, they had failed to adequately warn drivers using the road that the lanes had not yet been delineated. The failure to paint the lines was an operational omission that resulted in removal of the city's immunity.

Similarly, the Court of Appeals in *Morrow v. Town of Madisonville,* 737 S.W.2d 547 (Tenn.Ct.App.1987), where the plaintiff was injured after falling into an open water meter box, held that an employee's failure to replace the lid on the box was not a "discretionary function." The city made the initial decision to protect passing traffic by placing lids over the water meters, then failed to follow its own policy by neglecting to replace the lid on the box. The court found that immunity was removed under Tenn.Code Ann. § 29–20–205, and the government was liable for the negligent failure of the employee to replace the lid on the water meter. Again, the result in *Morrow* would have been the same had the "planning-operational test" been applied. It was an operational omission that exposed the town to liability.

█ In the case under review, we conclude that the decision to forgo installation of guardrails on the bridge was a discretionary function. This decision was made by Macon County authorities "charged with the formation of such plans...." *Bowers,* 826 S.W.2d at 431 [4] and was supported by the need to permit a significant volume of farm equipment to use the bridge. Moreover, this decision was consistent with the financial restraints under which the county operated. *Id.* Hence, because the decision to omit the installation of guardrails was discretionary, governmental immunity was not removed under Tenn.Code Ann. § 29–20–205.[5]

4. While the state inspectors made recommendations to the county, it was within the county's authority to decide whether to follow these recommendations.

5. We note that the issue of installation of guard rails on a bridge was addressed in *Watts v. Robertson County,* 849 S.W.2d 798 (Tenn.Ct.App. 1992). Except for one important distinction, the facts in *Watts* are very similar to the facts in this

case. The plaintiffs in *Watts* were injured when their car went off the road as they were approaching a bridge during a severe winter storm. The bridge had no guardrails. Robertson County had adopted a private act that imposed a duty on counties to make inspections of all roads, highways, and bridges to ensure they were in good repair and safe for travel. The county had delegated this responsibility to the state. Despite several state inspection reports recommending

## IV

Alternatively, the plaintiffs alleged that the county failed to adequately maintain the wooden wheel guards on the bridge, thereby causing a defective, unsafe, and dangerous condition. When such failure to maintain the wooden wheel guards produces a defective, unsafe, and dangerous condition, liability could follow if the county had actual or constructive notice. *See* Tenn.Code Ann. § 29–20–203. *See also, Fretwell v. Chaffin,* 652 S.W.2d 755, 757 (Tenn.1983) (although decision to put up stop sign was discretionary, once it was there, the city had a duty to reasonably and adequately maintain it); *Swafford v. City of Chattanooga,* 743 S.W.2d 174, 177 (although building the road was discretionary, once it was constructed, the city had a duty to maintain the road's surface in a reasonably safe condition).

Applying this analysis to the case under submission, the first issue is whether Macon County met its obligation to maintain the wheel guards in a reasonably safe condition. Tenn.Code Ann. § 29–20–203(a). Jones, Macon County Road Superintendent, testified that the absence of wheel guards on the bridge would have created an unsafe condition. Accepting this, the crucial question is whether the county had notice, either actual or constructive, of the missing wheel guards. Tenn.Code Ann. § 29–20–203(b).

■ "Actual notice" has been defined by our Court as "knowledge of facts and circumstances sufficiently pertinent in character to enable reasonably cautious and prudent persons to investigate and ascertain as to the ultimate facts." *Texas Co. v. Aycock,* 190 Tenn. 16, 227 S.W.2d 41, 46 (Tenn.1950) (quoting 39 *American Jurisprudence,* Section 4, page 234). "Constructive notice" is "information or knowledge of a fact imputed by law to a person (although he may not actually have it), because he could have discovered the fact by proper diligence, and his situation was such as to cast upon him the duty of inquiring into it." *Black's Law Dictionary,* 1062 (6th ed. 1990).

The trial court and the Court of Appeals found that Kirby had failed to prove actual or constructive notice to the county. The Court of Appeals, however, held under the authority of *Glover v. Hardeman Co.,* that actual or constructive notice was not required. It reasoned that because the bridge had been built in a defective condition, i.e., the lack of guardrails, the county would be charged with notice. *Glover,* 713 S.W.2d 73, 76 (Tenn.Ct. App.1986).

The intermediate court's reliance on *Glover v. Hardeman Co.* is unwarranted. There is no claim by the plaintiffs that the bridge was originally built in a defective condition, nor is there evidence in the record to support such a finding. Further, in light of the preceding discussion, the decision whether to install guardrails was properly and clearly within the discretion of the Macon County officials.[6]

---

the installation of "approach guardrails" at the bridge, the county had failed to do so. *Id.* at 799–80. The court interpreted the private act to **require** the county to make **all** changes to their "roads, highways and bridges" as were recommended upon inspection. *Id.* at 801. Thus, the court reasoned that the private act became the "preexisting law[], regulation[], polic[y] or standard[]." *Bowers,* 826 S.W.2d at 431. In the instant case, however, there was no similar formal act imposing a specific duty on Macon County to make **all** changes recommended upon inspection. Macon County simply had a general duty to reasonably and adequately maintain its roads, highways and bridges. Within this general duty there is room for the decision-making body to "assess[] priorities; allocat[e] resources; develop[] policies; or establish[] plans, specifications, or schedules. . . ." *Id.* Therefore, to the extent that the private acts in *Watts* imposed a specific duty on the county to make all changes recommended upon inspection, *Watts* is inapposite.

**6.** We do not address the issue of whether a plaintiff may bypass the actual or constructive notice requirement under Tenn.Code Ann. § 29–20–203(b) by proving that the structure was defective as originally constructed. Note, however, that in *Glover* the county road commissioner made no estimate of the area or watershed which would drain into the culvert he constructed; further, he admitted that he could have obtained such information through state agencies but failed to ask. According to the expert in the case, it was essential to calculate the area of the watershed in order to determine the size culvert needed to drain the area. *Glover,* 713 S.W.2d at 75. Thus, a reasonable county road commissioner should have been on inquiry-notice from the beginning that the culvert might not have been constructed adequately. Therefore, the *Glover*

The evidence is clear in this case that Macon County officials and Jones in particular did not have actual notice of the missing wheel guards on the bridge. Not only did Jones testify that no one had notified him of any missing wheel guards after they had been replaced three weeks prior to the accident, but also the plaintiffs' witnesses conceded that they had not notified the county of any missing wheel guards. No proof of constructive notice was presented. There had been no prior accidents on this particular bridge. The testimony showed that as early as three weeks prior to the accident, all the wheel guards had been in place. No one could say when the wheel guards became displaced, whether three weeks before the accident or the morning of the accident. We think this proof, together with testimony that the Macon County road crews examined the bridges regularly and made immediate repairs when required, refutes a finding of actual or constructive notice. Thus, Macon County's immunity is intact, and suit will not lie.

Accordingly, we reverse the judgment of the Court of Appeals, we reinstate the trial court's judgment, and we dismiss the plaintiffs' action. Costs of this appeal are taxed to the plaintiffs.

O'BRIEN, C.J., and DROWOTA, ANDERSON and REID, JJ., concur.

### ORDER

PER CURIAM.

The plaintiffs-appellees, Ronald Allen Kirby and Sharon Kirby, have filed a petition for rehearing in this cause. The Court has given careful thought and consideration to the matters raised and concludes that the petition should be, and is, hereby, denied. Costs are assessed against the plaintiffs-appellees.

court did not bypass the actual or constructive notice requirement of Tenn.Code Ann. § 29–20–203(b). Further, reliance by the *Glover* court on

*Poole v. Jackson,* 93 Tenn. 62, 23 S.W. 57 (1893) was misplaced because it predates the Tennessee Governmental Tort Liability Act.