IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON

## ROXIE B. CROWELL and JOHN CROWELL, Individually and as Parents AND Next Friends fo Dana Crowell and William Wilson v. MAYOR DICK HACKETT and THE CITY OF MEMPHIS

**Direct Appeal from the Circuit Court for Shelby County**
**No. 24760 T.D.    Kay S. Robilio, Judge**

**No. W1999-02747-COA-R3-CV - Decided May 12, 2000**

This is an automobile accident case under the governmental tort liability act. The plaintiffs were in a car struck by another car at a city intersection, after the plaintiff driver failed to stop at a stop sign. The stop sign was overgrown by tree limbs. The plaintiffs filed suit against the city, asserting that the city's failure to maintain the stop sign caused the accident. The trial court found that the city was 51% at fault and that the plaintiff driver was 49% at fault. The city appeals. We affirm, finding that the evidence does not preponderate against the trial court's decision.

**Tenn. R. App. P. 3; Judgment of the Circuit Court is Affirmed.**

HOLLY KIRBY LILLARD, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and DAVID R. FARMER, J., joined.

Harvey L. Gipson, Memphis, Tennessee, for the appellee, Roxie B. Crowell and John Crowell, Individually and as Parents and Next Friends of Dana Crowell and William Wilson.

Robert M. Fargarson, Memphis, Tennessee, for the appllants, Mayor Dick Hackett and The City of Memphis.

### OPINION

On June 12, 1987, Nashville residents John and Roxie Crowell ("Mr Crowell" and "Mrs. Crowell"), and their two young children, five-year-old William Wilson ("William"), and two-year-old Dana Crowell ("Dana"), traveled to Memphis to visit the Memphis Zoo. The entrance to the zoo is on Galloway Avenue, approximately one block east of McLean Boulevard. Stop signs on either side of Galloway at McLean direct Galloway traffic to yield the right of way to McLean traffic.

The Crowells were unfamiliar with Memphis. They relied on directions from a friend to find the zoo. Following these directions, Mr. Crowell drove south on McLean until he reached Galloway, where he turned left. He then drove one block east on Galloway until he reached the entrance to the zoo. Mrs. Crowell sat in the front passenger seat and helped watch for signs for the zoo.

When the family left the zoo three hours later, Mrs. Crowell drove. A light rain was falling, and she had her headlights and windshield wipers on. She headed west on Galloway at about 20 to 25 miles per hour. She intended to turn right when she reached McLean, in order to retrace the route her husband had taken to get to the zoo. When she reached the intersection of Galloway and McLean, however, she continued going straight into the intersection, without slowing or stopping. The Crowells' car was then struck by a southbound car. Mr. and Mrs. Crowell and Dana escaped the accident with relatively minor injuries. However, five-year-old William received a serious cut to his forehead, which required extensive follow-up treatment. The Crowells' car was totaled.

Mrs. Crowell asserted that untrimmed tree branches obscured the stop sign at McLean and Galloway. She maintained that the visual obstruction of the stop sign caused the accident. The Crowells filed suit on their own behalf and on behalf of their two children against the City of Memphis ("City") and Mayor Dick Hackett, under the Tennessee Governmental Tort Liability Act, Tennessee Code Annotated § 29-20-101 *et seq*. The Act removes the immunity of governmental entities under certain circumstances for injury caused by unsafe streets or highways:

> **29-20-203. Removal of immunity for unsafe streets and highways–Notice required.**–(a) Immunity from suit of a governmental entity is removed for any injury caused by a defective, unsafe, or dangerous condition of any street, alley, sidewalk or highway, owned and controlled by such governmental entity. "Street" or "highway" includes traffic control devices thereon.
> (b) This section shall not apply unless constructive notice and/or actual notice to the governmental entity of such condition be alleged and proved in addition to the procedural notice required by § 29-20-302 [repealed].

Tenn. Code Ann. § 29-20-203 (Supp. 1999). The Crowells alleged that the City had a duty to maintain the stop sign in a reasonable condition, based on Tennessee Code Annotated § 7-31-101, which states that incorporated municipalities have a duty to keep roads in good repair, and a Memphis city ordinance, Memphis Code § 21-366, which states in part, "The director of public works shall, as authorized by the city engineer, place and maintain traffic-control signs, signals and devices . . . ." The Crowells asserted that the City's negligent failure to trim the trees that obscured the stop sign was the cause of the accident.

The City denied that it was negligent and asserted that the cause of the accident was Mrs. Crowell's negligence in failing to keep a proper lookout and to yield the right of way at the intersection. The City also contended that it had neither actual nor constructive notice of the stop sign's condition, as required by Tennessee Code Annotated § 29-20-203(b). On June 8, 1988, Mayor Hackett and the City filed a motion to dismiss. Mayor Hackett asserted that no personal cause of

action existed against him. The City alleged that the Plaintiffs had failed to plead the notice necessary to remove its immunity from suit, as required by Tennessee Code Annotated § 29-20-203(b). On July 2, 1992, the trial court issued an order dismissing the suit against Mayor Hackett, and denying the City's motion to dismiss.

On September 16, 1998, a bench trial was held. Mrs. Crowell testified that she was driving 20 to 25 miles per hour, keeping a careful lookout ahead, when the accident occurred. She did not slow or stop at McLean because she saw neither the stop sign nor any other indication that she was approaching a cross street. She asserted that the stop sign was completely hidden by tree branches and leaves. Mrs. Crowell took photographs of the location a few days after the accident, showing the stop sign covered by overhanging tree limbs; these photographs were introduced into evidence. Mrs. Crowell stated that she never saw the car that hit them until after the crash. Mrs. Crowell and other family members testified as to damages, including the value of their car.

On November 10, 1998, the trial court issued its order of judgment. The trial court found that the evidence preponderated in favor of the Plaintiffs, finding the City 51% at fault and Mrs. Crowell 49% at fault. Damages for the Plaintiffs were determined to be: $2,500 for Mrs. Crowell; $2,500 for Mr. Crowell; $2,000 for Dana; and $35,000 for William. Based on its allocation of fault, the court, therefore, ordered that the City pay $1,275 each to Mr. and Mrs. Crowell, $1,020 to Dana Crowell, and $17,850 to William Wilson. From this entry of judgment, the City now appeals.

The City raises two issues on appeal: whether the trial court erred in finding that the City had either actual or constructive notice of the stop sign's condition; and whether the preponderance of the evidence supports the trial court's finding that the City was 51% at fault and Mrs. Crowell was only 49% at fault. The Crowells raise the additional issue of whether the trial court erred by failing to include the damage to their car in its award of damages.

Since this case was tried before the court sitting without a jury, we review all findings of fact *de novo* upon the record of the trial court, with a presumption of correctness of the trial court's findings of fact. Tenn. R. App. P. 13(d). We review all conclusions of law *de novo* upon the record, with no presumption of correctness. *See Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1991).

The City first argues that the trial court erred by finding that the City had notice of the stop sign's condition. The City asserts that there was no evidence to support a finding of either actual or constructive notice, and that without such notice the City retains its immunity from suit. The City notes that there had been no prior accidents at this location, and that it had received no reports about the tree limbs before the Crowells' accident. The Plaintiffs note the length of time it takes for tree limbs to grow to cover a stop sign and the absence of proof that the City followed a regular inspection program for this sign. In light of the City's duty to maintain streets and traffic-control devices, the Plaintiffs argue that this evidence supports a finding of constructive notice to the City.

3

Constructive notice was defined by the Tennessee Supreme Court in ***Kirby v. Macon County***, 892 S.W.2d 403 (Tenn. 1994), as "'information or knowledge of a fact imputed by law to a person (although he may not actually have it), because he could have discovered the fact by proper diligence, and his situation was such as to cast upon him the duty of inquiring into it.'" ***Id.*** at 409 (quoting ***Black's Law Dictionary***, 1062 (6th ed. 1990)).

The plaintiff in ***Kirby*** was injured when his truck slid off an ice covered wooden bridge in rural Macon County, Tennessee. He sued the county under the governmental tort liability act, alleging that the county's failure to replace missing bridge wheel guards created a defective, unsafe, and dangerous condition. The Tennessee Supreme Court first noted that no prior accidents had occurred at the same location, and also that it was impossible to know how long the wheel guards had been missing before the plaintiff's accident. The county had inspected the bridge and replaced missing wheel guards just three weeks before the accident. Under these circumstances, the Court concluded that the proof was insufficient to support a finding of constructive notice:

> No proof of constructive notice was presented. There had been no prior accidents on this particular bridge. The testimony showed that as early as three weeks prior to the accident, the wheel guards had been in place. No one could say when the wheel guards became displaced, whether three weeks before the accident or the morning of the accident. We think this proof, together with testimony that the Macon County road crews examined the bridges regularly and made immediate repairs when required, refutes a finding of constructive notice. Thus, Macon County's immunity is intact, and suit will not lie.

***Id.*** at 410. In this case, as in ***Kirby***, there was no record of prior accidents at the same location, and no evidence of actual notice. However, unlike ***Kirby***, in order for the tree limbs to have obscured the stop sign as shown in the photographs, the condition must have been in existence for a substantial period of time before the Crowells' accident. In addition, the City presented no proof of when it had last inspected the sign, or if it ever had. Under these circumstances, while the question is close, we cannot conclude that the evidence preponderates against the trial court's finding that the City had constructive notice of the stop sign's condition.

The City next argues that the trial court erred in its allocation of fault. The City contends that the preponderance of the evidence does not support the trial court's finding that the City was 51% at fault, while Mrs. Crowell was only 49% at fault. The City notes that Mrs. Crowell had driven through the same intersection just three hours earlier, and argues that Mrs. Crowell's claim that she failed to see the stop sign does not excuse her of her negligence in failing to see the entire intersection. The City asserts that Mrs. Crowell's negligence was the sole, direct and proximate cause of the Crowells' accident.

4

A trial court sitting as trier of fact is given broad discretion in allocating percentages of fault to negligent parties. ***Coln v. City of Savannah***, 966 S.W.2d 34, 44 (Tenn. 1998). Some cases have indicated that the trial court's allocation of fault may be altered on appeal if the evidence preponderates against it. ***See Wright v. City of Knoxville***, 898 S.W.2d 177, 181 (Tenn. 1995) and ***Varner v. Perryman***, 969 S.W.2d 410, 411 (Tenn. Ct. App. 1997) (quoting ***Wright***). However, more recent decisions indicate that the allocation of fault may be altered on appeal only if it is clearly erroneous. ***See Coln***, 966 S.W.2d at 45. Regardless, we find that the evidence does not preponderate against the trial court's allocation of fault. Therefore, we affirm the trial court's finding that the City was negligent and 51% at fault, and that Mrs. Crowell was negligent and 49% at fault.

Finally, the Plaintiffs contend that the trial court erred by failing to include the damage to their car in its determination of damages. The Plaintiffs assert that they presented undisputed evidence that the car was totaled in the accident, and that the trial court erred by failing to include the $4,000 damage to the car in its award of damages.

In this case, the trial court awarded each plaintiff a lump sum award, without breaking the amount down into specific categories. Consequently, there is no indication that the damage to the car was not included in the total award. After reviewing the record, we find no error in the trial court's damage award. The decision of the trial court on this issue is affirmed.

The decision of the trial court is affirmed. Costs on appeal are taxed equally to Appellant, City of Memphis, and Appellees, Roxie B. Crowell and John Crowell, Individually and as Parents and Next Friends of Dana Crowell and William Wilson, for which execution may issue, if necessary.

HOLLY KIRBY LILLARD, J.
W. FRANK CRAWFORD, P.J., W.S.
DAVID R. FARMER, J.