IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
May 8, 2019 Session

## SHANERA JONES v. PUBLIX SUPERMARKET, INC. ET AL.

Appeal from the Circuit Court for Davidson County
No. 16C-2594          Amanda Jane McClendon, Judge

_____

### No. M2018-01672-COA-R3-CV

_____

This is a premises liability case.  Appellant slipped and fell in a clear substance on the floor of Appellee Publix Supermarket and filed suit against the grocery chain.  Appellee filed a motion for summary judgment, which the trial court granted, finding that Appellant failed to show that Appellee had actual or constructive notice of the dangerous condition.  Appellant appeals.  Discerning no error, we affirm the trial court's grant of summary judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court
Affirmed and Remanded**

KENNY ARMSTRONG, J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S. and CARMA D. MCGEE, J., joined.

Joseph A. Weir, Phillip G. Gombar, Smyrna, Tennessee, for the appellant, Shanera Jones.

Steven Douglas Parman, Nashville, Tennessee, for the appellees, Publix Supermarkets, Inc., and Publix Tennessee, LLC.

### OPINION

#### I. Background

On October 6, 2015, Appellant Shanera Jones was shopping at the Publix Supermarket on Concord Road in Davidson County.  Ms. Jones used a hand-held basket while shopping.  After procuring a few items, she proceeded to the seafood department; as Ms. Jones rounded a corner from an aisle, she slipped on "liquid that was present on the floor" and fell.  Ms. Jones was carrying her basket on her left arm and attempted to break her fall with her right arm.  Within seconds, Ms. Jones stood up from the floor and continued shopping.  Store video captured the entire event.  By the time Ms. Jones was

checking out, Michael Goldfarb, an assistant customer service manager, had been notified of the incident. He approached Ms. Jones to ask if she was okay. Ms. Jones did not state that she was injured, but merely explained that she fell by the seafood department. When Mr. Goldfarb asked if she wanted to fill out an incident report, Ms. Jones declined. However, she returned to the store the next day to fill out a report.

Prior to Ms. Jones's fall, store video shows several customers traversing the area where Ms. Jones's fell. Approximately two minutes before the fall, the video shows a possible source of a small amount of liquid on the floor. The video shows a toddler in a "kiddy cart" in the area. The child appears to drink from a container (sippy cup/bottle) and then drop the container inside the cart. Any liquid inside the container could have fallen through the wire bottom of the cart onto the floor. Ms. Jones disputes that this was the source of the substance on the floor because she described the liquid as "oily." However, Ms. Jones does not identify another possible source for the liquid.

During discovery, Ms. Jones deposed Donald Shaw, a Publix employee who was working in the seafood department on the day of the incident. Mr. Shaw testified that he was waiting on a customer when Ms. Jones fell, but he did not witness the fall. However, he "heard the commotion" and saw her stand up. Mr. Shaw testified that he immediately left the seafood counter and went to the spot where Ms. Jones fell in an attempt to help her, but she had already exited the area when he arrived. Indeed, the store video footage shows a Publix employee behind the seafood counter when Ms. Jones fell. Shortly after Ms. Jones left the area, the same Publix employee arrived at the location where she fell. Upon watching the video, Mr. Shaw confirmed that he was that Publix employee. In the video, Mr. Shaw can be seen looking around and calling for another person to come to the area. Mr. Shaw stood at the location where Ms. Jones fell until another employee, Nawzad Ahmad, came over with paper towels to clean the liquid from the floor.[1] According to the video, Mr. Ahmad brought paper towels and cleaned the liquid up two minutes after Ms. Jones fell. Mr. Shaw testified that he did not feel the substance, but he observed that "[t]here was a little bit of water . . . not a puddle." Mr. Shaw clarified that it "was a clear liquid." He also testified that he could not recall seeing anything spilled in that area prior to Ms. Jones's fall.

After the incident, Mr. Goldfarb and Tim Cochran, the store manager, inspected the area where Ms. Jones fell. In his deposition, Mr. Cochran testified that he looked at the floor and noticed "a heel mark, like a scuff mark," and that he "check[ed] the area for any moisture" but did not feel any kind of substance on the floor.[2] Mr. Cochran also testified that, prior to Ms. Jones's fall, he was not aware of any reports, from an employee or a customer, of a spill or wet substance on the floor in that area.

_____

[1] Ms. Jones also deposed Mr. Ahmad who could not recall the incident.
[2] According to the store video, Messrs. Goldfarb and Cochran inspected the area after Mr. Ahmad cleaned the substance from the floor.

On September 29, 2016, Ms. Jones filed suit in Davidson County Circuit Court ("trial court") against Publix Super Markets, Inc. and Publix Tennessee, LLC (together "Publix," or "Appellees") alleging negligence and seeking damages for injuries she allegedly sustained in the October 6, 2015 fall. On October 20, 2016, Publix answered denying any liability. On March 12, 2018, Publix filed a motion for summary judgment. Ms. Jones filed a response in opposition to the motion. The trial court heard the motion for summary judgment on May 11, 2018. On August 21, 2018, the trial court issued a memorandum opinion and order granting Appellees' motion for summary judgment. Ms. Jones appeals.

## II. Issues

Ms. Jones raises two issues, which we restate as follows:

1. Whether the trial court erred in determining that Publix did not have constructive notice of the dangerous condition that caused Appellant to fall.

2. Whether the trial court erred in determining that no genuine issues of fact exist in this case.

## III. Standard of Review

A trial court's decision to grant a motion for summary judgment presents a question of law. Therefore, our review is *de novo* with no presumption of correctness afforded to the trial court's determination. **Bain v. Wells**, 936 S.W.2d 618, 622 (Tenn. 1997). This Court must make a fresh determination that all requirements of Tennessee Rule of Civil Procedure 56 have been satisfied. **Abshure v. Methodist Healthcare-Memphis Hosps**., 325 S.W.3d 98, 103 (Tenn. 2010). When a motion for summary judgment is made, the moving party has the burden of showing that "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Tenn. R. Civ. P. 56.04. Despite Appellant's contention that there are disputed material facts so as to preclude summary judgment, we disagree. As set out below, the sole issue before us is whether Publix had constructive notice of the liquid substance on the floor. The Tennessee Supreme Court has explained that when the party moving for summary judgment does not bear the burden of proof at trial, "the moving party may satisfy its burden of production either (1) by affirmatively negating an essential element of the nonmoving party's claim or (2) by demonstrating that the nonmoving party's evidence at the summary judgment stage is insufficient to establish the nonmoving party's claim or defense." **Rye v. Women's Care Center of Memphis, MPLLC**, 477 S.W.3d 235, 264 (Tenn. 2015) (italics omitted). Furthermore,

"When a motion for summary judgment is made [and] . . . supported as

- 3 -

provided in [Tennessee Rule 56]," to survive summary judgment, the nonmoving party "may not rest upon the mere allegations or denials of [its] pleading," but must respond, and by affidavits or one of the other means provided in Tennessee Rule 56, "set forth specific facts" at the summary judgment stage "showing that there is a genuine issue for trial." Tenn. R. Civ. P. 56.06. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.,* [*Ltd. v. Zenith Radio Corp*.], 475 U.S. [574,] 586, 106 S. Ct. 1348 [(1986)]. The nonmoving party must demonstrate the existence of specific facts in the record which could lead a rational trier of fact to find in favor of the nonmoving party.

*Rye*, 477 S.W.3d at 265.

## IV. Analysis

In order to prevail on a negligence claim, a plaintiff must provide evidence to establish the following elements: (1) a duty of care defendant owed to plaintiff; (2) a breach of that duty of care; (3) an injury or loss; (4) cause in fact; and (5) proximate or legal cause. *King v. Anderson Cnty.*, 419 S.W.3d 232, 246 (Tenn. 2013). In premises liability actions, such as the case at bar, a premises owner's duty is to exercise "reasonable care with regard to social guests or business invitees in the premises. The duty includes the responsibility to remove or warn against latent or hidden dangerous conditions on the premises of which one was aware or should have been aware through the exercise of reasonable diligence." *Rice v. Sabir*, 979 S.W.2d 305, 308 (Tenn. 1998). Liability in premises liability cases stems from superior knowledge of the condition of the premises. *McCormick v. Waters*, 594 S.W.2d 385, 387 (Tenn. 1980). Nonetheless, "[b]usiness proprietors are not insurers of their patrons' safety. However, they are required to use due care under all the circumstances." *Blair v. W. Town Mall*, 130 S.W.3d 761, 764 (Tenn. 2004) (citing *Martin v. Washmaster Auto Ctr., U.S.A.*, 946 S.W.2d 314, 318 (Tenn. Ct. App. 1996)). Accordingly, due to a property owner's superior knowledge, a property owner has "the responsibility of either removing, or warning against, any dangerous condition on the premises of which the property owner is *actually aware* or *should be aware* through the exercise of reasonable diligence." *Parker v. Holiday Hosp. Franchising, Inc.*, 446 S.W.3d 341, 350 (Tenn. 2014) (emphasis added) (citing *Eaton v. McLain*, 891 S.W.2d 587, 594 (Tenn. 1994)). As the Tennessee Supreme Court has made clear, for a plaintiff to prevail on a claim of premises liability, in addition to the elements of negligence, the plaintiff must establish that:

1) the condition was caused or created by the owner, operator, or his agent, or

2) if the condition was created by someone other than the owner, operator,

- 4 -

> or his agent, that the owner or operator had actual or constructive notice
> that the condition existed prior to the accident.

**Blair**, 130 S.W.3d at 764.

Here, the trial court granted Publix's motion for summary judgment on its finding that Ms. Jones failed to provide facts sufficient to show Publix's actual or constructive notice of liquid on the floor. The Tennessee Supreme Court defines "actual notice" as "knowledge of facts and circumstances sufficiently pertinent in character to enable reasonably cautious and prudent persons to investigate and ascertain as to the ultimate facts." **Kirby v. Macon Co.**, 892 S.W.2d 403, 409 (Tenn. 1994) (quoting **Texas Co. v. Aycock**, 227 S.W.2d 41, 46 (Tenn.1950)). "'Constructive notice' is defined as 'information or knowledge of a fact imputed by law to a person (although he may not actually have it) because he could have discovered the fact by proper diligence, and his situation was such as to cast upon him the duty of inquiring into it.'" **Parker**, 446 S.W.3d at 351 (citing **Hawks v. City of Westmoreland**, 960 S.W.2d 10, 15 (Tenn. 1997)). To establish constructive notice, the plaintiff must show "proof that the dangerous or defective condition existed for such a length of time that the defendant, in the exercise of reasonable care, should have become aware of the condition." **Blair**, 130 S.W.3d at 764. "[W]here liability is based on constructive knowledge of the dangerous or defective condition, there must be material evidence from which the trier of fact could conclude the condition existed for sufficient time and under such circumstances that one exercising reasonable care and diligence would have discovered the danger." **Paradiso v. Kroger Co.**, 499 S.W.2d 78, 79 (Tenn. Ct. App. 1973).

Based on the foregoing, in order to prevail on her negligence claim, Ms. Jones would have to provide sufficient evidence to, *inter alia*, establish that Publix breached its duty of care to her. As explained, *supra*, Publix had "the responsibility of either removing, or warning against, any dangerous condition on the premises of which [Publix] [was] *actually aware* or *should [have] be[en] aware* through the exercise of reasonable diligence." **Parker**, 446 S.W.3d at 350 (emphasis added) (citing **Eaton**, 891 S.W.2d at 594). Ms. Jones does not offer evidence to dispute the Publix employees' deposition testimony that there was no actual notice of the substance on the floor. Therefore, to prevail on her negligence claim, Ms. Jones must provide sufficient evidence to establish that Publix had constructive knowledge of the dangerous condition, i.e., "the dangerous or defective condition existed for such a length of time that [Publix], in the exercise of reasonable care, should have become aware of the condition." **Blair**, 130 S.W.3d at 764.

In its motion for summary judgment and on appeal, Publix argues that there is no evidence that it had actual or constructive notice of the substance on the floor. Specifically, concerning constructive notice, Publix maintains that the video evidence undisputedly established that there was an insufficient length of time between the toddler spilling the liquid and Ms. Jones's fall to establish that Publix "should have become

aware of the condition." *Id.* We have reviewed the video evidence. The footage shows a child in a shopping cart appearing on camera at 17:46:18; the child plays with the bottle/sippy cup and drops it in the cart twice before leaving the camera view at 17:47:14. From 17:47:14 until Ms. Jones appears on camera at 17:48:50, six people are seen traversing the area where Ms. Jones fell, without slipping or falling. None of these people are Publix employees. Ms. Jones appears in camera view at 17:48:50 and falls at 17:48:51. Given the truncated time between these events, Publix argues, there was nothing to put it on notice of the dangerous condition such that Publix could have reasonably taken action to clean up the spill.

Again, Ms. Jones does not argue that Publix had actual notice of the dangerous condition, only that it had constructive notice. Ms. Jones relies on *Benson v. H.G. Hill Stores, Inc.*, 699 S.W.2d 560 (Tenn. Ct. App. 1985), in support of her argument. In *Benson*, the plaintiff was walking by the check-out lanes at closing when she slipped and fell on the freshly waxed floor. *Id.* at 561. The plaintiff testified that there were no other customers in the store, but that her fall was in plain view of two store employees. *Id.* The trial court granted a directed verdict in favor of the defendant grocery store, concluding that the plaintiff failed to establish that the grocery store caused the dangerous condition or had notice of same. *Id.* at 561-62. On appeal, this Court reasoned that a jury could reasonably infer that the defendant grocery store applied the wet wax to the floor because grocery store employees regularly apply wet wax to the floors as part of routine cleaning. *Id.* at 563. If the jury did not come to this conclusion, this Court reasoned that the jury could also surmise that the wax was spilled on the floor by either an employee or a customer. *Id.* at 564. If the employee spilled the wax, the grocery store would have knowledge of the dangerous situation. *Id.* However, the Court reasoned that if a customer spilled the wax, because there were two employees "a few feet" from the scene, a reasonable jury could infer that the employees observed or should have observed the spill, producing constructive notice of the danger. *Id.*

Ms. Jones uses *Benson* for the proposition that, despite a plaintiff having no corroborating witnesses, a jury could nonetheless make reasonable inferences from a given set of facts. She argues that "a jury could reasonably infer from the set of facts in this case that the oily substance that caused Ms. Jones to slip and fall was either spilled by an employee or by a customer."[3] Ms. Jones also argues that a jury could "reasonably infer that the presence of Mr. Shaw a mere ten feet away from the site of [Ms. Jones]'s accident, as well as the fact that the fall occurred in a 'high traffic' area where employees frequently traveled in order to obtain inventory, that the spillage was observed or should have been observed by employees of Publix, thereby producing constructive notice of the dangerous condition."

---

[3] We note that if a reasonable jury could infer that an employee spilled the substance on the floor that would create an inference that Publix had actual notice of the liquid on the floor, an argument Ms. Jones does not make.

***Benson*** is factually distinguishable from our case. Here, we do not know the nature of the substance on the floor. After her fall, Ms. Jones briefly looked at the floor but did not touch the floor or the substance. Her own testimony was that there were only "[a] few wet spots" or "little splatters" on the floor, and it was a clear "oily like" substance. Even viewing these facts in the light most favorable to Ms. Jones, there are no other alleged facts that support a reasonable conclusion that Publix caused the unsafe condition or had reason to know about it. In ***Benson***, the plaintiff slipped on wax at closing time, from which a jury could reasonably infer that the wax was put on the floor by employees doing routine maintenance at closing time. Here, however, the droplets on the floor are from an unknown source (although likely a toddler spill). It would be difficult, therefore, for a jury to reasonably infer that Publix caused the unsafe condition or, given the truncated time frame discussed, *supra*, knew about it. It is undisputed that none of the deposed Publix employees knew the origin of the substance. Mr. Cochran testified that he was not made aware of any reports of a spill prior to Ms. Jones's fall. Similarly, Mr. Shaw testified that he could not recall seeing anything spilled in that area prior to the fall. Ms. Jones herself admits that she did not see anything on the floor before she fell. Further, the video footage shows many customers traversing the area directly before Ms. Jones's fall, and shows Mr. Shaw distracted with another customer. This is another way in which this case differs from ***Benson***, where the plaintiff testified that it was late at night and she did not see any other customers in the store. Here, Ms. Jones fell at 5:48 p.m. in the middle of a busy shopping period with many other customers around and Publix employees interacting with those customers. Even if a customer spilled the substance on the floor, Ms. Jones has not alleged sufficient facts to demonstrate that there were Publix employees who could have or should have observed the spill that caused her fall. Therefore, under the undisputed facts of the case, there is no reasonable inference that Publix had constructive notice of the dangerous condition, i.e., the substance on the floor, thereby distinguishing this case from ***Benson***.

Based on the foregoing discussion, Publix satisfied its summary judgment burden by: (1) affirmatively negating an essential element of Ms. Jones's claim; and (2) demonstrating that Ms. Jones's evidence at the summary judgment stage is insufficient to establish Publix's negligence. Specifically, Publix affirmatively negated the essential element of Ms. Jones's negligence claim because it showed that Publix did not breach its duty to her—the substance on the floor did not exist for such a length of time that Publix, in the exercise of reasonable care, should have become aware of the condition. *See **Blair***, 130 S.W.3d at 764. The video footage shows six people walking in the same location where Ms. Jones fell within a minute and a half before her fall; none of these people slipped or showed any sign that there was a slippery substance on the floor.

To survive summary judgment, Ms. Jones was required to "set forth specific facts" showing that there was a genuine issue for trial. ***Rye***, 477 S.W.3d at 265. She has failed to do so. In essence, the only "disputed" facts Ms. Jones alleges are: (1) the substance on

the floor was "oily," so it was not water; (2) because children do not drink oil, the child dropping the sippy cup or bottle was not the cause of the substance on the floor; and (3) there was a nearby floral case that was known to leak water.[4] Even if the child with the sippy cup/bottle was not the cause of the liquid on the floor, Ms. Jones has not set forth any specific facts to establish that the substance, whatever it was, had been on the floor for a sufficient time to charge Publix with constructive notice of it. *See Id.* Regardless, the nature of the substance is irrelevant to our inquiry here; to prove negligence, Ms. Jones must show that the substance, whatever it was, had been on the floor for an extended period of time such that Publix should have known about it and cleaned it up. In this regard, Ms. Jones's allegations are exactly what the Tennessee Supreme Court warned against in *Rye*. She has done no more than to show "that there is some metaphysical doubt as to the material facts," i.e. there is a metaphysical doubt concerning the type of substance that was on the floor. *Matsushita Elec. Indus. Co., Ltd.*, 475 U.S. at 586. We agree with the trial court that "the only evidence suggests that a small amount of clear liquid was on the floor, and apparently only for a short period of time before [Ms. Jones] fell." Therefore, Ms. Jones's evidence at the summary judgment stage simply does not show that Publix had constructive notice of the dangerous condition and is, therefore, insufficient to establish Publix's negligence.

## V. Conclusion

For the foregoing reasons, we affirm the trial court's order. The case is remanded for such further proceedings as may be necessary and are consistent with this opinion. Costs of the appeal are assessed against Appellant, Shanera Jones, for all of which execution may issue if necessary.

_____
KENNY ARMSTRONG, JUDGE

---

[4] The floral case argument is a bit illogical because Ms. Jones argues that she slipped in an "oily" substance, and the testimony from Mr. Ahmad was that the floral case had been known to leak water, not oil. Further, there is nothing in the record to suggest that the floral case leaked on this occasion.