# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
June 29, 2017 Session

## SUE ANN TEMPLETON v. JACKSON-MADISON COUNTY GENERAL HOSPITAL DISTRICT

**Appeal from the Circuit Court for Madison County**
**No. C-14-213          Roy B. Morgan, Jr., Judge**

————————————————————

### No. W2016-02419-COA-R3-CV

————————————————————

This is an appeal from the grant of summary judgment in a Tennessee Governmental Tort Liability Act ("GTLA") premises liability case. Appellant was exiting Jackson-Madison County General Hospital/Appellee when she was hit by an automatic door, fell, and sustained a broken femur. Appellee moved for summary judgment on the ground that it was immune from suit under the GTLA. Appellant argued that Appellee failed to make a reasonable inspection of the automatic door, so as to discover the alleged dangerous or defective condition. The trial court granted summary judgment in favor of Appellee, finding that the condition was not dangerous or defective, the condition was latent, and Appellee had no actual or constructive notice of the condition. Discerning no error, we affirm.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed and Remanded

KENNY ARMSTRONG, J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S., and BRANDON O. GIBSON, J., joined.

Donald N. Capparella, Nashville, Tennessee; Jonathan Levoy Griffith, Franklin, Tennessee; and Elizabeth Noel Sitgreaves, Brentwood, Tennessee, for the appellant, Sue Ann Templeton.

Craig P. Sanders and Patrick W. Rogers, Jackson, Tennessee, for the appellee, Jackson-Madison County General Hospital District.

# OPINION

## I. Background

On August 22, 2013, Sue Ann Templeton ("Ms. Templeton," or "Appellant") filed a prescription at the pharmacy at the Jackson-Madison County General Hospital District ("Hospital," or "Appellee"). Ingress and egress to the hospital is through two sets of automatic, motion-sensored, sliding doors. A review of the Hospital's security camera footage shows that, as Ms. Templeton was exiting the Hospital, she approached the first set of automatic doors at an angle parallel to the face of the door, then turned sharply left. As she crossed the threshold of the door, her shoulder hit the automatic sliding door panel, which was closing, and she fell and fractured her femur.

On August 19, 2014, Appellant filed a complaint in the Circuit Court for Madison County ("trial court") against the Hospital[1] and Tri-State Automatic Doors ("Tri-State").[2] Appellant averred that the automatic door struck her shoulder, causing her fall and subsequent injuries. Appellant further alleged that the Hospital and Tri-State negligently failed to: (1) maintain the premises in a reasonably safe condition; (2) discover the dangerous condition; (3) remove the dangerous condition; and (4) warn of the dangerous condition. Appellant argued that these failures removed Appellee's governmental immunity under the Tennessee Governmental Tort Liability Act ("GTLA"), Tennessee Code Annotated Section 29-20-101, *et seq.* The Hospital filed its answer on September 23, 2014, wherein it denied liability and asserted that it was immune from liability pursuant to the GTLA.

On August 31, 2016, Appellee filed a motion for summary judgment. In its motion, the Hospital alleged that it was entitled to summary judgment due to GLTA immunity because: (1) Appellant's proof was insufficient to show that the premises were in a "dangerous or defective condition;" (2) if a dangerous condition existed, it was latent; and (3) Appellee did not have actual or constructive notice of a dangerous or defective condition.[3] On September 26, 2016, Appellant filed her response to the motion

---

[1] Appellant's complaint erroneously named the Hospital as "Bolivar General Hospital, Inc. d/b/a Jackson-Madison County General Hospital and West Tennessee Healthcare Inc." On September 30, 2014, the parties filed an agreed order to correct the style of the case.

[2] On April 11, 2016, Appellant voluntarily dismissed Tri-State. It is not a party to this appeal.

[3] Appellee also averred that it was immune from suit pursuant to Tennessee Code Annotated Section 29-20-205, which provides:

> Immunity from suit of all governmental entities is removed for injury proximately caused by a negligent act or omission of any employee within the scope of his employment except if the injury arises out of:
>
> > (4) A failure to make an inspection, or by reason of making an inadequate or negligent inspection of any property.

The trial court did not discuss this provision in its judgment. Neither party raises this issue, and, accordingly, the issue is waived for appellate review. *In re Kaliyah S.*, 455 S.W.3d 533, 557 (Tenn.

for summary judgment, alleging that: (1) because she was struck by the automatic door, a dangerous condition existed; (2) Appellee failed to complete proper safety checks and, therefore, had constructive notice of the dangerous condition; and (3) the dangerous condition would have been discovered if Appellee had properly inspected the door, and, therefore, the dangerous condition was not latent.

On September 29, 2016, the trial court heard Appellee's motion for summary judgment. By order of October 17, 2016, the trial court granted summary judgment in favor of Appellee. The trial court's order states, in relevant part:

> The Court finds that governmental immunity precludes [Appellant's] case. Tennessee Code Annotated § 29-20-204(a) provides that immunity from suit is removed for injury caused by "a dangerous or defective condition" of any public building. The Court finds that the automatic doors at issue did not constitute a "dangerous or defective condition" based upon the record before it. The undisputed proof shows that a very large number of people used the automatic doors at issue daily for a long period of time both before and after [Appellant's] fall…. [Appellant] is the only known person to have ever allegedly been struck by the automatic doors. Also, two maintenance mechanics from the Plant Operations department of the [Appellee] checked the automatic doors shortly after [Appellant's] fall. Neither mechanic found any problem with the automatic doors.

> For these reasons, as well as others set forth in [Appellee's] Memorandum of Law in Support of Motion for Summary Judgment, a reasonable trier of fact could not find that the automatic doors constituted a "dangerous or defective condition" at the time of [Appellant's] fall based upon the undisputed proof.

> The Court further finds that the alleged condition was latent, even assuming it was present. Therefore, [Appellee] is entitled to summary judgment even if the undisputed proof had shown that the condition was a "dangerous or defective" one. Tennessee Code Annotated § 29-20-204(b) provides that governmental immunity is not removed for latent conditions. The undisputed proof shows that the alleged condition, even assuming it existed, could not be seen absent special circumstances and may have never been seen even with extensive use…. The expert, Warren Davis, Ph.D., testified in deposition that it requires a "special circumstance" to see the alleged problem. He further testified that "it's entirely possible to use the door many, many times in such a way that you'll never see the door behave in any way that gives you a clue that that presence sensor or whatever it is

2015) (stating that the failure to raise an issue on appeal results in its waiver).

is not working." For these reasons, as well as others set forth in [Appellee's] Memorandum of Law in Support of Motion for Summary Judgment, the Court finds that the alleged condition was latent based upon the undisputed proof.

The Court also finds that [Appellee] did not have actual or constructive notice of the alleged condition. Therefore, [Appellee] is entitled to summary judgment even if the undisputed proof had shown that the condition was a "dangerous or defective" one and that the condition was non-latent. The undisputed proof shows that nobody affiliated with [Appellee] was aware of any prior problems with the automatic doors at issue hitting people or closing on people before Plaintiff's fall despite heavy use of the doors. [Appellee's] employees, who were deposed by [Appellant], indicated that they were not aware of any similar incidents or complaints. Considering the evidence in the light most favorable to [Appellant], the Court finds no evidence on which to conclude that [Appellee] had actual or constructive knowledge that a problem existed with the automatic doors prior to [Appellant's] fall.

There is also a lack of proof as to the length of time the alleged dangerous condition existed on [Appellee's] property. [Appellant's] own expert testified that he does not know how long the alleged defective condition existed and that his opinion is limited to the time of [Appellant's] fall. [Appellee] has negated an essential element of [Appellant's] claim by showing that [Appellant] cannot prove how long the alleged defective condition was present, which is necessary to prove constructive notice in this case.

The Court further finds that there was no specific duty required of [Appellee] in checking the automatic doors at issue other than what the record shows [Appellee] did. A defendant using due care would not have discovered the alleged dangerous condition even assuming it was present.

Appellant appeals.

## II. Issues

Appellant raises four issues for review, as stated in her brief:

I. Whether the trial court erred in granting summary judgment on [Appellant's] GTLA claim against [Appellee].

II. Whether the trial court erred in finding that there was no dangerous or

- 4 -

defective condition where there were disputed material facts as to whether the automatic doors at issue constituted a dangerous or defective condition.

III. Whether the trial court erred in finding that if a dangerous or defective condition existed, it was a latent condition, where there were genuine issues of material fact as to whether [Appellee] in exercising its duty to maintain reasonably safe premises would have learned of the dangerous or defective condition by making a reasonable inspection as required to maintain the door in good working order.

IV. Whether the trial court erred in finding that [Appellee] negated the essential element of actual or constructive notice where there were genuine issues of material fact as to… whether there was constructive notice and [Appellee] admitted that it owed a duty to [Appellant].

## III. Standard of Review

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. We review a trial court's ruling on a motion for summary judgment *de novo*, without a presumption of correctness. *Rye v. Women's Care Center of Memphis, MPLLC*, 477 S.W.3d 235, 250 (Tenn. 2015) (citing *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997)). "In doing so, we make a fresh determination of whether the requirements of Rule 56 of the Tennessee Rules of Civil Procedure have been satisfied." *Id.* (citing *Estate of Brown*, 402 S.W.3d 193, 198 (Tenn. 2013)).

## IV. Analysis

In order to prevail on a negligence claim, a plaintiff must provide evidence to establish the following elements: (1) a duty of care owed by defendant to plaintiff; (2) a breach of that duty of care; (3) an injury or loss; (4) cause in fact; and (5) proximate or legal cause. *King v. Anderson Cnty.*, 419 S.W.3d 232, 246 (Tenn. 2013). In premises liability actions, such as the case at bar, a premises owner's duty is to exercise "reasonable care with regard to social guests or business invitees in the premises. The duty includes the responsibility to remove or warn against latent or hidden dangerous conditions on the premises of which one was aware or should have been aware through the exercise of reasonable diligence." *Rice v. Sabir*, 979 S.W.2d 305, 308 (Tenn. 1998). "Liability in premises liability cases stems from superior knowledge of the condition of the premises." *McCormick v. Waters*, 594 S.W.2d 385, 387 (Tenn. 1980). Nonetheless, "[b]usiness proprietors are not insurers of their patrons' safety. However, they are

required to use due care under all circumstances." ***Blair v. W. Town Mall***, 130 S.W.3d 761, 764 (Tenn. 2004) (citing ***Martin v. Washmaster Auto Ctr., U.S.A.***, 946 S.W.2d 314, 318 (Tenn. Ct. App. 1996)). Because of a property owner's superior knowledge, he or she has "the responsibility of either removing, or warning against, any dangerous condition on the premises of which the property owner is actually aware or should be aware through the exercise of reasonable diligence." ***Parker v. Holiday Hosp. Franchising, Inc.***, 446 S.W.3d 341, 350 (Tenn. 2014) (citing ***Eaton v. McLain***, 891 S.W.2d 587, 594 (Tenn. 1994)). As the Tennessee Supreme Court has made clear, for a plaintiff to prevail on a claim of premises liability, in addition to the elements of negligence, the plaintiff must establish that:

> 1) the condition was caused or created by the owner, operator, or his agent, or
>
> 2) if the condition was created by someone other than the owner, operator, or his agent, that the owner or operator had actual or constructive notice that the condition existed prior to the accident.

***Blair***, 130 S.W.3d at 764.

It is undisputed that Appellee is a governmental entity; therefore, this case is governed by the premises liability principles enumerated in the GTLA. Pursuant to the GTLA, "all governmental entities shall be immune from suit for any injury which may result from the activities of such governmental entities wherein such governmental entities are engaged in the exercise and discharge of any of their functions, governmental or proprietary." Tenn. Code Ann. § 29-20-201. However, the statute specifies certain circumstances in which governmental immunity is removed. ***Davis v. City of Cleveland***, 709 S.W.2d 613, 615 (Tenn. Ct. App. 1986). Specifically, at issue in this case, Tennessee Code Annotated Section 29-20-204 provides that:

> (a) Immunity from suit of a governmental entity is removed for any injury caused by the dangerous or defective condition of any public building, structure, dam, reservoir or other public improvement owned and controlled by such governmental entity.
>
> (b) Immunity is not removed for latent defective conditions, nor shall this section apply unless constructive and/or actual notice to the governmental entity of such condition be alleged and proved in addition to the procedural notice required by § 29-20-302 [repealed].

To address whether the trial court erred by granting summary judgment in favor of Appellee, pursuant to the above statute, this Court must consider these two issues: (1) whether the alleged defect in the automatic door was latent; and (2) whether the Appellee

had actual or constructive notice of the alleged defect.

The trial court found that even if the condition was "dangerous or defective," the condition was latent, and, therefore, governmental immunity was not removed pursuant to Tennessee Code Annotated Section 29-20-204(b). The Tennessee Supreme Court has defined a "latent defect," as used in the GTLA, as a "hidden or concealed defect…. which could not be discovered by reasonable and customary inspection." *Hawks v. City of Westmoreland*, 860 S.W.2d 10, 17 (Tenn. 1997).

In reaching its decision on the motion for summary judgment, the trial court cited the following deposition testimony: (1) several individuals, including Mark Jones, the Hospital's Director of Plant Operations; Earl Bowman, the Hospital's maintenance mechanic; Tony Warren, a security guard; and Don Thompson, an automatic door technician, testified that no other Hospital patron reported any similar incidents with the door; (2) Mr. Warren also testified that security personnel monitored the door at all times but never observed a problem with the door; and (3) Messrs. Bowman and Jones inspected the door after Ms. Templeton's injury, and they observed no problems with the door. Nonetheless, Appellant contends that Appellee failed to properly inspect the automatic door. Specifically, Appellant cites the deposition testimony of her expert witness, Warren Davis, who holds a Ph.D. in Physics. Dr. Davis opined that: (1) Ms. Templeton's fall was caused by motion and/or presence detection sensors that may have been "mal-aimed" or may have had a design defect; (2) the Hospital failed to properly test the automatic door at issue to ensure that it was safe; and (3) proper testing would have prevented Appellant's accident. Dr. Davis' report stated that, had Appellee performed the safety inspections recommended by Dr. Davis "each and every day, then more likely than not problems with the sensors would have been discovered and corrected prior to Ms. Templeton's injury." Dr. Davis further opined that the safety test used by the Hospital maintenance employees was a simple "walk through test," where the employees simply walked through the doors and observed the doors opening and closing. Dr. Davis testified that the owner's manual for the automatic door provided instructions for conducting a daily "parallel walk test." Conducting such a "parallel walk test," Dr. Davis opined, would have revealed the defect in the "motion and/or presence detection sensors." Dr. Davis also stated that the safety decal, which is affixed to the automatic door, provides instructions for a proper daily safety check.[4]

---

[4] The decal instructs that a daily safety check should proceed as follows:

1. Walk toward the door at a normal pace. The door should open when you are about 4 feet from the door.
2. Stand motionless on the threshold for at least 10 seconds. The door should not close.
3. Move clear of the area. The door should remain open for at least 1.5 seconds and should close slowly and smoothly.
4. Repeat steps 1 through 3 from the other direction if the door is used for two way traffic.
5. Inspect the floor area. It should be clean with no loose parts that might cause user to

The complete depositions of the Hospital maintenance employees are not included in the record, but portions of the depositions are included in Appellee's motion for summary judgment. Earl Bowman, a maintenance mechanic, testified that he inspected the door after Ms. Templeton's accident. His inspection consisted of: (1) walking through the door; (2) watching the doors open and close; (3) observing the Hospital patrons walk through the door; (4) listening for noises from the door; and (5) inspecting the track of the door. He stated that his inspection revealed that "the door was functioning fine." Mr. Thompson, who is an American Association of Automatic Door Manufacturers ("AAADM") certified automatic door technician, serviced the doors on January 14, 2013, which was approximately eight months before Ms. Templeton's accident.[5] Mr. Thompson stated that a proper inspection consisted of the process outlined on the door safety decal, and the doors passed this inspection without any problems. On September 26, 2014, Mr. Thompson conducted additional work on the doors and replaced the door sensors; from the record, it is unclear if he also inspected the doors at this time. Mr. Thompson testified, in relevant part, as follows:

Q. Is it your experience if a sensor or a door is malfunctioning and striking people, not picking up, that it would continually do it versus just do it once and never do it again?

A. Yes, it would continually do it.

Q. So it's not something that's gonna happen once and then never do it again for a year later?

A. I wouldn't think so.

From the evidence, it appears that the Hospital conducted a "reasonable inspection" of the automatic door at issue. *Hawks v. City of Westmoreland*, 860 S.W.2d 10, 17 (Tenn. 1997). However, this conclusion does not end our analysis. Our caselaw instructs that the issue of constructive notice is intertwined with the question of whether a condition is latent. *McCormick v. Warren Cnty. Bd. of Educ.*, No. M2011-02261-COA-R3-CV, 2013 WL 167764, at \*7 (Tenn. Ct. App. Jan. 15, 2013) ("[T]he question of constructive notice of a defective or dangerous condition is related to the question of whether the

---

trip or fall. Keep traffic path clear.

6. Inspect door's overall condition. The appropriate signage should be present.
7. Have the door inspected by an [American Association of Automatic Door Manufacturers] certified inspector at least annually.

[5] As stated by the door decal, quoted *supra*, the automatic doors should be inspected by a door technician at least once per year. Dr. Davis testified that, at its last service date, Tri-State failed to affix an additional inspection decal on the door. Without the inspection decal, Dr. Davis stated he was "very suspect of how [Mr. Thompson] would have done [the inspection].... [t]here was no claim, no evidence that a proper AAADM certified annual compliance inspection was ever done on this door."

- 8 -

condition constitutes a latent defective condition; the two are essentially flip sides of the same coin."); *see also Hawks*, 960 S.W.2d at 16 ("Proof that a governmental entity failed to adequately inspect property or improvements which it owned and controlled is directly relevant to the question of whether it had constructive notice of the dangerous or defective condition resulting in injury.").

Appellant argues that the trial court erred by finding that Appellee was immune from suit pursuant to the GTLA because Appellee had no constructive notice of the alleged dangerous or defective condition.[6] Tenn. Code Ann. § 29-20-204(b). This Court has defined "constructive notice" as follows:

> Constructive notice… is defined as "information or knowledge of a fact imputed by law to a person (although he may not actually have it) because he could have discovered the fact by proper diligence, and his situation was such as to cast upon him the duty of inquiring into it." *Parker v. Holiday Hosp. Franchising, Inc.*, 446 S.W.3d 341, 351-52 (Tenn. 2014) (quoting *Hawks*[], 960 S.W.2d [at] 15[]). Constructive notice may be established by showing that a dangerous or defective condition existed for such a length of time that a property owner, in the exercise of reasonable care, should have become aware of it. *Parker*, 446 S.W.3d at 352 (citing *Simmons v. Sears, Roebuck & Co.*, 713 S.W.2d 640, 641 (Tenn. 1986)). Constructive notice may also be established by showing that the dangerous condition resulted from "'a pattern of conduct, a recurring incident, or a general or continuing condition.'" *Parker*, 446 S.W.3d at 352 (quoting *Blair v. West Town Mall*, 130 S.W.3d 761, 765 (Tenn. 2004)).

*Fowler v. City of Memphis*, 514 S.W.3d 732, 737-38 (Tenn. Ct. App. 2016). Additionally, "the Tort Liability Act requires notice of the *actual* defective or dangerous condition alleged to have caused the loss." *Champlin v. Metro. Gov't of Nashville*, No. M2007-02158-COA-R3-CV, 2009 WL 1065937, at *5 (Tenn. Ct. App. Apr. 20, 2009)) (emphasis added). Accordingly, Appellant must show that the Hospital had notice of the *particular* dangerous condition at issue, i.e., the automatic door's failure to open when Ms. Templeton approached the door from a parallel trajectory. *See Helton v. Knox Cnty.*, 922 S.W.2d 877, 882 (Tenn. 1996) (considering whether "a particular site" on a highway bridge was defective or dangerous); *Ogilvie v. Metro. Gov't of Nashville*, No. 01-A-01-9709-CV-00466, 1998 WL 272793, at *2 (Tenn. Ct. App. May 29, 1998) (finding that a particular location on a sidewalk was not defective or dangerous); *Kelley v. City of Rockwood*, 934 S.W.2d 58, 64 (Tenn. Ct. App. 1996) (listing the factors in

---

[6] Although the GTLA removes immunity for a governmental entity's actual or constructive notice, Appellant stated in her response to Appellee's motion for summary judgment that she was proceeding on a theory of constructive notice only. Therefore, our analysis only considers the issue of constructive notice.

determining whether a specific intersection was defective or dangerous).

Regarding the alleged dangerous or defective condition, Dr. Davis testified, in pertinent part, as follows:

A. It's not visible. It's not easily seen. And it also requires a special circumstance, in this case, a trajectory that's more or less parallel to the face of the door in order to expose the problem.

\* \* \*

Q. This is not something like a spill on the floor or something that you can see with your own eyes; is that what you're saying?

A. That's correct. The example I gave, suppose the presence sensor isn't working or a hold-open beam isn't working. You can't see that immediately and it's entirely possible to use the door many, many times in such a way that you'll never see the door behave in any way that gives you a clue that that presence sensor or whatever it is is [sic] not working.

Again, the record is devoid of evidence of recurring incidents with this automatic door or any of the Hospital's automatic doors.  Nonetheless, Dr. Davis stated that "the door… could be—have occasionally struck people, but… [they] never reported it. So we don't know for sure that the door never behaved improperly."  This bare assertion, without corroboration, does not create a material dispute of fact as to any previous incidents with the door.  Additionally, Dr. Davis stated that he was not able to ascertain the duration of the defect or the cause of the alleged problem with the automatic door.  He testified:

Q.  … You don't know when that failure of the presence and motion detection zone first started; is that correct?

A.  That's correct.

Q.  And you also don't know what caused the potential causes?

A.  Correct.

The only allegation in the record to support a conclusion that the Hospital had constructive notice of a defective or dangerous condition, i.e., that Appellee failed to exercise reasonable care to discover the dangerous or defective condition, **Blair**, 130 S.W.3d at 764, is Dr. Davis' criticism of the Hospital's inspections of the door by its maintenance employees.  As Dr. Davis opined:

Q.  You testified in the past that daily safety checks even if done properly would not identify some problems with doors; is that fair to say?

A.  Yes. There are circumstances in which it would not identify a problem, yes.

Q. You think this case is different?

A.  Well, if it's a proper daily safety check and it includes that walk parallel to the face of the door which is in a proper daily safety check and in the daily safety check in the [automatic door] owner's manual, it definitely would have exposed the problem.

\* \* \*

Q.  Should the door have worked when a pedestrian approaches that door from a parallel position?

A. Yes. That's quite evident from the standard itself.

Turning to the standard that Dr. Davis cites above, the safety check outlined in the owner's manual instructs to "[w]alk parallel to the door face to check that the detection pattern is at least as wide as the door opening. *This test should be performed about 2 ½ feet from the door face.*" (emphasis added).  The AAADM's daily safety check instructs to "observe the traffic coming to the door… *from straight on and not from an angle.*" (emphasis added).  The standard relied on by Dr. Davis does not recommend testing to determine that the door detects motion immediately parallel and next to the door. Instead, the owner's manual recommends testing the motion-sensing capability parallel to the door at a distance of at least two and one-half feet from the door face and not at an angle immediately parallel to the door.  In his expert report, Dr. Davis described Ms. Templeton's path to the door as follows: "Ms. Templeton approached the subject door *at a steep angle* from the left interior side.  That is, Ms. Templeton approached along a trajectory *close to and nearly parallel* to the interior face of the door." (emphasis added; footnotes omitted).  The surveillance video included in the record supports this description.  From the video, Appellant approached directly beside the face of the door then stepped at an approximately ninety-degree angle into the automatic sliding door. Viewing Ms. Templeton's path against the type of "parallel walk" testing proposed by Dr. Davis (and recommended by the AAADM), even if Appellee had conducted the recommended testing, there is no evidence in the record to indicate that Appellee would have discovered the alleged dangerous or defective condition that allegedly caused Appellant's injury.

In another case where a governmental entity had no notice of any prior accidents

or complaints of an alleged defect, a cyclist brought a GTLA negligence claim against the City of Nashville when she was injured due to a defect in a section of the sidewalk that allegedly caused her bicycle to crash. *Champlin*, 2009 WL 1065937, at \*3-4. The cyclist proffered expert depositions and a report detailing the sidewalk's noncompliance with federal standards, but because the city had no prior accidents or complaints at the location of the fall, this Court declined to reverse the trial court's grant of summary judgment in favor of the City of Nashville. *Id.* Likewise, in *Kirby v. Macon County*, 892 S.W.2d 403 (Tenn. 1994), the Tennessee Supreme Court held that the governmental entity had no constructive notice of a dangerous condition. In *Kirby*, icy weather caused the plaintiff's car to slide off a county bridge that did not have wooden wheelguards in place. *Id.* at 404. To demonstrate that the county had notice of the dangerous condition, the plaintiff introduced several annual reports from the Tennessee Department of Transportation, wherein it had determined that the bridge was in "poor" or "critical" condition. The Department's report also noted that the bridge's wheelguards were decaying or damaged. *Id.* at 405. However, county officials replaced the wheelguards three weeks before the accident and, since the repairs, the county had received no notice of any problems on the bridge or, particularly, with the wheelguards. Based on this evidence, the Court held that the county did not have constructive notice of the condition and, therefore, was immune to suit. *Id.* at 409.

In the case at bar, in the absence of facts showing that Appellee could have discovered, by a reasonable inspection, the alleged dangerous or defective condition that caused Appellant's injuries, there is no material evidence from which the trier of fact could conclude that the Hospital's immunity should be removed. Accordingly, we affirm the trial court's order granting summary judgment in favor of Appellee.

## V. Conclusion

For the foregoing reasons, the judgment of the trial court is affirmed. The case is remanded for such further proceedings as may be necessary and are consistent with this opinion. Costs of the appeal are taxed to the Appellant, Sue Ann Templeton and her surety, for all of which execution may issue if necessary.

_____
KENNY ARMSTRONG, JUDGE