IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
June 26, 2024 Session

**JEFFREY L. ROBERTS v. BARRY LYNN CARTER ET AL.**

**Appeal from the Circuit Court for Benton County**
**No. 20-CV-2 Bruce Irwin Griffey, Judge**

_____

**No. W2023-01316-COA-R3-CV**

_____

This is an appeal concerning the application of the Tennessee Governmental Tort Liability Act, specifically to Tennessee Code Annotated sections 29-20-203, 29-20-204, and 29-20-205 of the Act. At issue is the trial court's entry of summary judgment dismissing the plaintiff's claims against a county government for damages sustained from an automobile accident allegedly caused by the washout of a road maintained by the county. For the reasons stated herein, we conclude that the trial court erred in granting summary judgment regarding the plaintiff's claims under Tennessee Code Annotated sections 29-20-203 and 29-20-204. As to certain holdings the trial court made with respect to the pursuit of relief pursuant to section 29-20-205, we do not disturb the action of the trial court inasmuch as the plaintiff effectively abandons any reliance on that particular Code section on appeal.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Affirmed in Part, Reversed in Part, and Remanded**

ARNOLD B. GOLDIN, J., delivered the opinion of the Court, in which J. STEVEN STAFFORD, P.J., W.S., and KENNY ARMSTRONG, J., joined.

Charles L. Hicks, Camden, Tennessee, for the appellant, Jeffrey L. Roberts.

Nathan D. Tilly and Haynes T. Russell, Jackson, Tennessee, for the appellees, Barry Lynn Carter; Benton County, Tennessee; and Benton County Highway Department.

**OPINION**

**BACKGROUND AND PROCEDURAL HISTORY**

This case arises from a one vehicle accident, which occurred while appellant Jeffrey

Roberts was driving on Blackberry Road in Benton County, Tennessee. Approximately three weeks prior to the incident, an employee of the Benton County Highway Department noted the presence of erosion on the outlet end of a culvert on Blackberry Road. The county addressed the issue prior to the accident by laying down riprap stone on the outlet end of the culvert.

On the day of the incident, Benton County had sustained heavy rain, though it had stopped raining when, at approximately 9 p.m., Mr. Roberts began driving to a local Walmart. However, by the time he was driving on Blackberry Road, the rain began again. Mr. Roberts testified that his visibility was significantly hampered, and he therefore slowed his vehicle to a speed of twenty-five to thirty miles per hour, which was below Blackberry Road's posted forty-five miles per hour speed limit. Unable to observe the road damage because of the heavy rain, he encountered the washout on the inlet end of Blackberry Road and ultimately fell through a sinkhole, suffering physical injuries as a result. [1]

On January 31, 2020, Mr. Roberts filed a complaint against Barry Lynn Carter, individually and in his capacity as Road Superintendent for the Benton County Highway Department; the Benton County Highway Department; and Benton County, Tennessee. Subsequently, the trial court entered an order dismissing Mr. Roberts' claims against Barry Lynn Carter, both personally as well as in his capacity as Road Superintendent, and the Benton County Highway Department, leaving Benton County, Tennessee ("Benton County") as the sole defendant. In pertinent part, Mr. Roberts alleged that Benton County was negligent in maintaining Blackberry Road in a defective condition and failing to properly resolve the defect. Mr. Roberts cited to Tennessee's Governmental Tort Liability Act ("GTLA") as a basis for pursuing relief in this action, specifically invoking Tennessee Code Annotated sections 29-20-203, 29-20-204, and 29-20-205 in furtherance of his attempt at recovering. For ease of reference, we will hereafter simply refer to these provisions as section 29-20-203, section 29-20-204, and section 29-20-205, respectively.

Benton County filed an initial motion for summary judgment, arguing that Benton County's immunity was not removed under any of the sections of the statute cited by Mr. Roberts. As to section 29-20-203 and section 29-20-204, Benton County highlighted that both statutes require Mr. Roberts to prove Benton County had actual or constructive notice of the relevant defect in Blackberry Road. To that end, Benton County argued that Mr. Roberts had no evidence to support that Benton County had actual or constructive notice. As to section 29-20-205, which removes immunity for injury caused by a negligent act or omission of a governmental employee within the scope of his employment, Benton County noted that the section does not remove immunity for acts of governmental employees that fall under the discretionary function exception. Accordingly, Benton County contended that the decision to fix the erosion on the outlet end with riprap, instead of alternative

---

[1] Originating from the sudden erosion of a support surface, a washout can cause a sinkhole to form on a road, as is the case here.

remedial measures, was discretionary and therefore it remained immune from liability under section 29-20-205. Lastly, Benton County submitted that all of Mr. Roberts' claims are barred by the public duty doctrine, arguing that the duty to maintain Blackberry Road is a duty to all. Mr. Roberts filed a response and memorandum in opposition to Benton County's motion for summary judgment, and in his response, he contended that expert witness testimony supported the proposition that Benton County had notice of the defect in Blackberry Road. Mr. Roberts further argued that the public duty doctrine did not bar recovery in this case.

Initially, the trial court reserved judgment "[i]n the interest of allowing each side the full opportunity to present its case[.]" It also invited both parties to submit additional briefing on the issue of comparative fault. Whereas Benton County submitted additional briefing arguing that Mr. Roberts was at least equal in fault for the accident as Benton County, Mr. Roberts filed briefing arguing that he did not share in any degree of fault for the accident.

Subsequently, due to scheduling conflicts with his expert witness, Mr. Roberts moved for a continuance, which was granted by the trial court. Benton County then requested a status conference to discuss the procedural status of the case and associated issues. During the status conference, Benton County argued that "in light of the trial's continuance and the differing standards between summary judgment and trial, [the trial court] should not reserve ruling on summary judgment." The trial court agreed to permit additional oral argument regarding Benton County's motion for summary judgment.

Following oral argument, the trial court granted Benton County's motion for summary judgment on several grounds. Initially, the trial court indicated that Mr. Roberts would need to demonstrate that Benton County had actual or constructive notice of the defect that caused the washout on Blackberry Road to succeed in his claims under section 29-20-203 and section 29-20-204. As to actual notice, the trial court determined there was no evidence to support the position that Benton County had actual notice of a dangerous or defective condition affecting Blackberry Road.

In assessing constructive notice, the trial court concluded that the record did not support that Benton County had constructive notice of the defect or dangerous condition affecting Blackberry Road. In its discussion, the trial court emphasized that there had not been a previous washout of Blackberry Road, and there was no evidence to support that Benton County caused or created the defect in Blackberry Road that caused the washout. Moreover, the court determined that the presence of potholes, history of water overtopping the road, and presence of erosion on the outlet end was not sufficient to put Benton County on notice of a defect in Blackberry Road that would have caused the washout that injured Mr. Roberts.

In addressing the viability of Mr. Roberts' claim under section 29-20-205, the trial

court found that Mr. Roberts' claim would be barred under the discretionary function exception, as delineated in section 29-20-205(1). To that end, the court explained that "[a]cts are considered discretionary if they are performed during the planning stage" and, conversely, "those acts that implement the policies and procedures are seen as operational and are not discretionary[.]" Although Mr. Roberts alleged Benton County should have installed a headwall, apron, and a grate around the Blackberry Road culvert, the court determined that Benton County's decision to place riprap around the culvert was discretionary in nature and that it was therefore immune from liability under the GTLA.

Although the trial court disposed of Mr. Roberts' claims in connection with its conclusions concerning notice and the discretionary function exception, it additionally determined that the public duty doctrine barred all of the claims at issue. In applying the public duty doctrine, the court concluded that Benton County's duty to maintain Blackberry Road "is a duty owed to the general public, not just Plaintiff[,]" and therefore, Mr. Roberts' claim was barred under the public duty doctrine.

Finally, the trial court found that Mr. Roberts could not recover under his claim because "reasonable minds could not differ that Plaintiff was equal or more at fault." It found that Mr. Roberts knew it had been raining heavily the entire day prior to his attempt to traverse Blackberry Road. The trial court highlighted that Mr. Roberts attempted a different route to his destination but was forced to turn back to his house because flooding made a nearby underpass impassable. It stated that, "[i]nstead of prudently stopping at his house due to the observed flooding," Mr. Roberts chose to drive down Blackberry Road, even though the heavy rain had resumed at that point. Lastly, the court highlighted that Mr. Roberts approached the washout at thirty miles per hour, despite the fact he could not see the road due to heavy rain and considerable flooding. In light of these circumstances, the court determined that Mr. Roberts' speed was excessive, which, coupled with the lack of visibility, diminished his ability to react to the washout.

Mr. Roberts now appeals the trial court's judgment, raising multiple issues as noted below.

## ISSUES PRESENTED

In his appellate brief, Mr. Roberts presents several issues for this Court's review. As is relevant to this appeal and our disposition herein, we have recast the issues as follows:

I.      Whether the trial court erred in its analysis concerning section 29-20-205.
II.     Whether the trial court erred in finding and ruling that Benton County was entitled to summary judgment on Mr. Roberts' claims arising under sections 29-20-203 and 29-20-204 because it determined there was no genuine dispute of material fact concerning the lack of actual or constructive notice.

III. Whether the trial court erred in finding that the public duty doctrine applied as a second layer of defense and barred Mr. Roberts' GTLA claims.

IV. Whether the trial court erred in finding that Benton County was entitled to summary judgment under the doctrine of modified comparative fault.

## STANDARD OF REVIEW

"Summary judgment is appropriate when 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 250 (Tenn. 2015) (quoting Tenn. R. Civ. P. 56.04). "We review a trial court's ruling on a motion for summary judgment de novo, without a presumption of correctness." *Id.* (citing *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997)). "If the determination requires conclusions of law without any conclusions of fact, the matter is ripe for disposition by summary judgment." *Blue Bell Creameries, LP v. Roberts*, 333 S.W.3d 59, 64 (Tenn. 2011) (citing *Green v. Green*, 293 S.W.3d 493, 513 (Tenn. 2009)). "We note that, in reviewing this evidence, the trial court 'does not weigh the evidence, but must accept the nonmoving party's evidence as true, and view both the evidence and all reasonable inferences that can be drawn therefrom in the light most favorable to the nonmoving party.'" *Tatham v. Bridgestone Americas Holding, Inc.*, 473 S.W.3d 734, 751-52 (Tenn. 2015) (quoting *Shipley v. Williams*, 350 S.W.3d 527, 551 (Tenn. 2011)).

## DISCUSSION

Although the common law doctrine of sovereign immunity protects governmental entities "from liability for damages caused by their tortious act[,]" the GTLA removes sovereign immunity "in limited and specified instances." *Kirby v. Macon Cnty.*, 892 S.W.2d 403, 406 (Tenn. 1994). Among those instances relevant to this appeal, Mr. Roberts' claims rely upon three separate sections of the GTLA: section 29-20-203, section 29-20-204, and section 29-20-205.

Section 29-20-203 provides in pertinent part as follows:

(a) Immunity from suit of a governmental entity is removed for any injury caused by a defective, unsafe, or dangerous condition of any street, alley, sidewalk or highway, owned and controlled by such governmental entity. "Street" or "highway" includes traffic control devices thereon.
(b) This section shall not apply unless constructive and/or actual notice to the governmental entity of such condition be alleged and proved . . . .

Tenn. Code Ann. § 29-20-203.

In turn, Section 29-20-204 provides in pertinent part that

(a) Immunity from suit of a governmental entity is removed for any injury caused by the dangerous or defective condition of any public building, structure, dam, reservoir or other public improvement owned and controlled by such governmental entity.

(b) Immunity is not removed for latent defective conditions, nor shall this section apply unless constructive and/or actual notice to the governmental entity of such condition be alleged and proved . . . .

Tenn. Code Ann. § 29-20-204.

Lastly, section 29-20-205 provides in pertinent part that

[i]mmunity from suit of all governmental entities is removed for injury proximately caused by a negligent act or omission of any employee within the scope of his employment except if the injury arises out of:

(1) The exercise or performance or the failure to exercise or perform a discretionary function, whether or not the discretion is abused; . . . .

Tenn. Code Ann. § 29-20-205.

"We point out here that the application of one of these immunity exceptions does not necessarily preclude the application of another. In other words, it is conceivable that either provision might apply to remove governmental immunity. Likewise, it is possible that no exception will apply, thereby preserving governmental immunity." *Kirby*, 892 S.W.2d at 406. Because each section presents a separate exception to immunity, all should therefore be considered separately. *Helton v. Knox Cnty.*, 922 S.W.2d 877, 885 (Tenn. 1996).

*Discretionary Function Exception*

We first assess whether Benton County was immune, within the purview of the GTLA, from its decision to place riprap around the culvert. Section 29-20-205 provides that "[i]mmunity from suit of all governmental entities is removed for injury proximately caused by a negligent act or omission of any employee within the scope of his employment . . . ." Tenn. Code Ann. § 29-20-205. Unlike the other provisions at issue herein, section 29-20-205, which codifies what is commonly known as the discretionary function exception, explicitly provides that actions or omissions of governmental employees will still remain immune from a lawsuit arising under section 29-20-205 if the claim "[a]rises out of the exercise or performance or the failure to exercise or perform a discretionary function, whether or not the discretion is abused[.]" Tenn. Code Ann. § 29-20-205(1).

- 6 -

Although Mr. Roberts raises an issue questioning whether the trial court correctly ruled that his "claims are barred by the discretionary function exception[,]" he does not challenge the validity of the trial court's determination that Benton County maintained immunity under section 29-20-205. Instead, he states "that his action is being brought pursuant to Tenn. Code Ann. § 29-20-203 and that discretionary function is a non issue and discretionary function does not apply." We agree with Mr. Roberts' assertion insofar as the discretionary function exception would not apply to his remaining claims. *See Hawks v. City of Westmoreland*, 960 S.W.2d 10, 16 (Tenn. 1997) (concluding that the application of an exception listed in section 29-20-205 does not apply to a claim brought under section 29-20-204). However, we observe that the trial court did not apply the discretionary function exception to Mr. Roberts' claims arising under section 29-20-203 or section 29-20-204. Because Mr. Roberts' appellate argument does not further challenge the trial court's determination as to his claim under section 29-20-205 and even appears to abandon any claim made pursuant to section 29-20-205, we conclude there is nothing further presented for review as to the trial court's determination under this section.[2]

*Notice*

We next address the trial court's judgment concerning the viability of Mr. Roberts' remaining claims arising under section 29-20-203 and section 29-20-204. These remaining claims are not subject to the discretionary function exception. For the purposes of a claim under sections 29-20-203 or 29-20-204, the governmental defendant must have either actual or constructive notice of the alleged defect. The Tennessee Supreme Court has previously described both forms of notice, stating as follows:

> "Actual notice" has been defined by our Court as "knowledge of facts and circumstances sufficiently pertinent in character to enable reasonably cautious and prudent persons to investigate and ascertain as to the ultimate facts." *Texas Co. v. Aycock*, 190 Tenn. 16, 227 S.W.2d 41, 46 (Tenn.1950) (quoting 39 *American Jurisprudence*, Section 4, page 234). "Constructive notice" is "information or knowledge of a fact imputed by law to a person (although he may not actually have it), because he could have discovered the fact by proper diligence, and his situation was such as to cast upon him the duty of inquiring into it." *Black's Law Dictionary*, 1062 (6th ed. 1990).

*Kirby v. Macon Cnty.*, 892 S.W.2d 403, 409 (Tenn. 1994).

---

[2] Mr. Roberts also raises an issue as to "[w]hether the trial court erred in finding and holding Plaintiff's section § 29-20-205 claim was barred on the grounds of Plaintiff failing to raise a genuine issue of material fact with respect to actual or constructive notice." Similar to his argument concerning the discretionary function exception, Mr. Roberts contends he is "relying upon *Tenn. Code Ann.* 29-20-203." As such, we conclude there is nothing further presented for review as to the trial court's determination concerning section 29-20-205.

In the instant case, Mr. Carter reported that he noticed erosion on the outlet end of the culvert, prompting Benton County to place additional riprap on the outlet end. However, the washout that allegedly injured Mr. Roberts occurred on the inlet side of the culvert. The trial court ruled that Benton County did not have actual notice, finding that none of Benton County's employees knew about erosion forming on the inlet side of the culvert. Moreover, the trial court found that Benton County did not have constructive notice, finding, in pertinent part, that knowledge of erosion on the outlet end of the culvert did not put Benton County on notice of possible erosion on the inlet end. The trial court also determined, as noted earlier, that the presence of potholes and a history of water overtopping the road was not sufficient to put Benton County on notice of a defect in Blackberry Road that would have caused the washout that injured Mr. Roberts.

Upon our review of the record, we observe that the deposition testimony of Benton County's expert witness, Terry Drumwright, supports Mr. Roberts' position that the presence of erosion, regardless of where it was noted, puts Benton County on constructive notice of the defective nature of Blackberry Road. During Mr. Drumwright's deposition, he was asked the following question: "[I]f there's evidence that the drainage underneath the road, especially if it's a culvert, is having problems as far as erosion, that would put somebody on notice to check that out and see what's happening; correct?" In response, Mr. Drumwright agreed. Furthermore, Mr. Drumwright noted that a reasonable individual would notice erosion if they conducted an inspection of the culvert.

When determining whether to grant summary judgment, "the trial court 'does not weigh the evidence, but must accept the nonmoving party's evidence as true, and view both the evidence and all reasonable inferences that can be drawn therefrom in the light most favorable to the nonmoving party.'" *Tatham v. Bridgestone Americas Holding, Inc.*, 473 S.W.3d 734, 751-52 (Tenn. 2015) (quoting *Shipley v. Williams*, 350 S.W.3d 527, 551 (Tenn. 2011)). In keeping with this principle, we observe that Mr. Drumwright's testimony indicates that the presence of erosion, even if noted only on one end, would signal that a more detailed inspection of the *entire* culvert was necessary. Because, as previously discussed, Benton County would have constructive notice of potential issues on the inlet side if such issues were discoverable through "proper diligence" and the "situation was such as to cast upon [it] the duty of inquiring into it," *Kirby,* 892 S.W.2d at 409, we conclude that Mr. Drumwright's testimony creates a genuine dispute of material fact as to whether Benton County had constructive notice, rendering summary judgment inappropriate.

*Public Duty Doctrine*

Having concluded that it was improper to grant summary judgment based upon a lack of notice, we next address whether the public duty doctrine nonetheless preserves Benton County's immunity to claims arising under section 29-20-203 and section 29-20-204. "The public duty doctrine originated at common-law and shields a public employee

from suits for injuries that are caused by the public employee's breach of a duty owed to the public at large." *Ezell v. Cockrell*, 902 S.W.2d 394, 397 (Tenn. 1995). The Tennessee Supreme Court has previously determined that the enactment of the GTLA did not abolish the public duty doctrine. *Id*. at 400-01. However, we have previously held that the public duty doctrine is not necessarily applicable to all claims arising from the GTLA. For example, this Court has previously discussed the inapplicability of the public duty doctrine to section 29-20-203, stating

> [h]ere, we presume the General Assembly knew that the public duty doctrine provided immunity for the breach of a duty owed to the public at large when it passed Tenn. Code Ann. § 29-20-203. Yet, all claims arising under § 29-20-203 necessarily stem from a breach of a duty owed to the public at large rather than a duty owed to a particular individual. To conclude that the public duty doctrine overrides the express intent of the General Assembly to remove immunity for "any injury caused by *a defective, unsafe, or dangerous condition of any . . . sidewalk . . ., owned and controlled by such governmental entity*" would render Tenn. Code Ann. § 29-20-203 useless and a nullity.

*Lawson v. Maryville City Sch*., No. E2019-02194-COA-R3-CV, 2020 WL 7391151, at *5 (Tenn. Ct. App. Dec. 14, 2020) (alteration in original). Because section 29-20-203 removes immunity for the failure to maintain safe roads, the application of the public duty doctrine here would be in direct conflict with the General Assembly's express intent.

Although the *Lawson* court did not discuss the applicability of the public duty doctrine to claims pleaded pursuant to section 29-20-204, we conclude that the public duty doctrine could not apply to section 29-20-204 for the same reasons it is inapplicable to section 29-20-203. Section 29-20-204 provides in pertinent part that:

> (a) Immunity from suit of a governmental entity is removed for any injury caused by the dangerous or defective condition of any public building, structure, dam, reservoir or other public improvement owned and controlled by such governmental entity.
> (b) Immunity is not removed for latent defective conditions, nor shall this section apply unless constructive and/or actual notice to the governmental entity of such condition be alleged . . . .

Tenn. Code Ann. § 29-20-204.

Similar to *Lawson*'s discussion concerning section 29-20-203, we observe that all claims arising under section 29-20-204 also "necessarily stem from a breach of a duty owed to the public at large rather than a duty owed to a particular individual." *Lawson*, 2020 WL 7391151, at *5. Because the application of the public duty doctrine would render section

29-20-204 "useless and a nullity[,]" we conclude that the public duty doctrine is inapplicable to claims arising under either section 29-20-203 or section 29-20-204.[3]

*Comparative Fault*

We next consider the trial court's holding that Mr. Roberts' lawsuit was barred under the doctrine of comparative fault. Comparative fault will preclude a plaintiff from recovering if his or her fault was equal to or greater than the fault of the defendant. *McIntyre v. Balentine*, 833 S.W.2d 52, 57 (Tenn. 1992). "When an individual is operating a motor vehicle, he or she is required to operate the vehicle in such a manner and at such a speed that is consistent with what a reasonable and prudent person would do under the same or similar circumstances." *Hardeman Cnty. v. McIntyre*, 420 S.W.3d 742, 750 (Tenn. Ct. App. 2013) (citing *Ward v. Gilless*, No. W1999-01324-COA-R3-CV, 2000 WL 34411148, at *3 (Tenn. Ct. App. Aug. 21, 2000)). "When determining whether an individual has conformed to this standard, the trier of fact must consider the evidence presented regarding the facts of the case and may also rely on the considerations of logic, common sense, public policy, and precedent." *Id*. (citing *Ward*, 2000 WL 34411148, at *3). Although "there is no legal prohibition in granting a defendant summary judgment based on the defense of comparative fault[,]" the question of apportioning fault between parties is generally considered a question of fact. *Halmon v. Lane Coll.*, No. W2019-01224-COA-R3-CV, 2020 WL 2790455, at *3 (Tenn. Ct. App. May 29, 2020). As such, granting summary judgment based upon the affirmative defense of comparative fault is reserved for "those situations where reasonable minds could only conclude that the plaintiff was at fault, and that the plaintiff's fault was equal to or greater than the fault of the defendant." *Norris v. Pruitte*, No. 01A01-9709-CV-00506, 1998 WL 1988563, at *3 (Tenn. Ct. App. Aug. 24, 1998).

When granting summary judgment in favor of Benton County on the ground of comparative fault, the trial court specifically found that Mr. Roberts was at least fifty percent at fault because he chose to drive at night during heavy rain, which impacted his visibility and reaction time. Moreover, the court determined that, even though Mr. Roberts reduced his speed to thirty miles per hour from the posted speed limit of forty-five miles per hour, this speed was still too fast to compensate for the poor driving conditions. The court compared the instant circumstance to three previous Tennessee cases:

> When analyzing a party's negligence, Tennessee courts apply the reasonable and prudent person in the same or similar circumstances standard. *Hardeman Cty. v. McIntyre*, 420 S.W.3d 742, 750 (Tenn. Ct. App. 2013). In the motor vehicle context, this requires an individual to "operate the vehicle in such a

---

[3] Due to our disposition concerning the inapplicability of the public duty doctrine to both section 29-20-203 and section 29-20-204, Mr. Roberts' alternative arguments raised in association with this issue are pretermitted.

manner and at such a speed that is consistent with what a reasonable and prudent person would do under the same or similar circumstances." *Id*. Consistent with this rule, a driver must operate their vehicle at a speed that would allow them to avoid any potential obstruction or condition in the roadway based on the conditions of the roadway and atmosphere at that time. *Id*. at 750-51. "The mere fact that a motorist is operating his or her vehicle at a speed that is within the limit proscribed by law does not preclude the conclusion that the speed is excessive under the circumstances." *Id*. at 751. Instead, in some circumstances, a lower speed is warranted. For example, a driver "at night in a dark place" is negligent where they are driving fast enough that they cannot "avoid an obstruction." *Quarles v. Gregg*, 30 Tenn. App. 216 (Tenn. Ct. App. 1947). Likewise, driving at or under the speed limit where there is heavy rain, reduced visibility, or known flooding have also been found to constitute negligence barring a plaintiff's recovery. *See i.e. Ward v. Gilless*, 2000 Tenn. App. LEXIS 576 (Tenn. Ct. App. Aug. 21, 2000) (upholding a trial court's finding that a decedent operated their vehicle "in a negligent and unsafe manner" despite traveling only thirty-five to thirty-seven miles-per-hour where it was raining heavily, visibility was limited, and the decedent had knowledge that other sections of roadway had flooded); *Hardeman Cty.*, 420 S.W.3d 742 (finding the decedent at fault despite the fact the he was traveling eight miles-per-hour under the posted speed limit when it had been raining heavily, the decedent was familiar with the road, and the decedent knew of flooding on other sections of the road).

In reviewing the trial court's analysis, we observe that none of the cases cited by the trial court concern the determination of comparative fault *at the summary judgment stage*. Moreover, drawing all inferences in favor of Mr. Roberts, we are of the opinion that there are a number of considerations which could lead reasonable minds to differ as to whether Mr. Roberts' alleged fault was equal to or greater than Benton County's. For example, whereas the trial court emphasized Mr. Roberts' decision to drive during heavy precipitation, we observe that the rainfall had significantly decreased when Mr. Roberts began to drive and remained relatively mild until shortly before he crashed into the washout. Although the trial court took issue with Mr. Roberts' decision to only reduce his speed by fifteen miles per hour below the posted limit, we note that Mr. Roberts was familiar with Blackberry Road, and we infer that this familiarity led him to believe he could continue traveling on it at a reduced speed. Moreover, a reasonable individual might adjust their speed upon the presumption that they could encounter flooding and standing water, but we are skeptical that a reasonable and prudent person would necessarily account for the possibility of a washout in light of the circumstances and conditions known to Mr. Roberts here. In light of the foregoing, we conclude that reasonable minds could disagree as to whether Mr. Roberts' alleged fault was equal or greater than Benton County's fault. Accordingly, the trial court erred in granting summary judgment based on comparative fault.

## CONCLUSION

For the foregoing reasons, the judgment of the trial court is affirmed as to its dismissal of the section 29-20-205 claim, but the judgment is reversed as it concerns the dismissal of Mr. Roberts claims under section 29-20-203 and section 29-20-204. We remand for further proceedings consistent with this Opinion.


s/ Arnold B. Goldin
ARNOLD B. GOLDIN, JUDGE